# UNITED STATES DISTRICT COURT

for the

District of

Division

|  |  |
|---|---|
| Jeremie Montgomery <br> _____ <br> *Plaintiff(s)* <br> (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) <br> -v- <br> International Brotherhood of Electrical Workers AFL-CIO (IBEW) Local 429, Conti Corp. <br> _____ <br> *Defendant(s)* <br> (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: *(check one)* ☑ Yes ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jeremie Montgomery |
| Street Address | 3069 Panorama East Apt G |
| City and County | Birmingham, Jefferson |
| State and Zip Code | AL 35215 |
| Telephone Number | 812-459-3264 |
| E-mail Address | jaygump777@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

Name — International Brotherhood of Electrical workers IBEW424

Job or Title (if known) — [IBEW 424] 2001 ElmHillPike Nashville, TN 37210

Street Address — 2001 Elm Hill Pike

City and County — Nashville    Davidson County

State and Zip Code — TN    37 210

Telephone Number — 615 - 889- 4424

E-mail Address (if known) — N/A

Defendant No. 2

Name — Conti Corp

Job or Title (if known) —

Street Address — 6417 Conti Corp Center Drive

City and County — Sterling Heights

State and Zip Code — MI / 48321

Telephone Number — (586)-274-4800 — headquarters    (615)-942-5894 Nashville office

E-mail Address (if known) —

Defendant No. 3

Name —

Job or Title (if known) —

Street Address —

City and County —

State and Zip Code —

Telephone Number —

E-mail Address (if known) —

Defendant No. 4

Name —

Job or Title (if known) —

Street Address —

City and County —

State and Zip Code —

Telephone Number —

E-mail Address (if known) —

**C.     Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

Name               IBEW Local 429

Street Address     2001 Elm Hill Pike

City and County    Nashville      Davidson  County

State and Zip Code TN      37210

Telephone Number   615-889-4429

Worksite - Fred D Thompson Federal Courthouse
719 Church St Nashville TN 37203
615-736-5498

**II.     Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✓]     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ]     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ]     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[✓]     Other federal law *(specify the federal law)*:    42 U.S.C. 1981

[ ]     Relevant state law *(specify, if known)*:

[ ]     Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ ✓ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☐ ✓ Failure to accommodate my disability.
- ☑ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

  *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

  May 26, 2021

C. I believe that defendant(s) *(check one)*:

- ☑ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

  _____

E. The facts of my case are as follows. Attach additional pages if needed.

Conti Corp and IBEW 429 violated the civil rights of Jerome Montgomery, He was terminated without just cause after he made a verbal grievance against a foreman. Conti Corps foreman made racist statements and bullied employees frequently, Plaintiffs Civil Complaint is attached.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

May, 2021

B.     The Equal Employment Opportunity Commission *(check one)*:

☑ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* _____.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Plaintiff would like

award of back pay that includes all forms of compensation
2 All court cost and litigation fees
3 Reinstatement of Union membership,
4 Front pay if a working relationship between parties would be a conflict,

Punitive Damages
-equitable Relief.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11-30 -2023

Signature of Plaintiff _____ Jeremy Montgomery _____

Printed Name of Plaintiff _____ Jeremie Montgomery _____

### B. For Attorneys

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF TENNESSEE

## NASHVILLE DIVISION

Jeremie Montgomery

Plaintiff

v.                                                    **Jury Trial Demanded**.

**International Brotherhood**

**of**

**Electrical Workers AFL-CIO**

**(IBEW) Local 429,**

**Conti Corp.**

Defendants

## *PLAINTIFF'S CIVIL COMPLAINT:* INTRODUCTION

Plaintiff Jeremie Montgomery files lawsuit against defendants Conti Corp. Inc. and IBEW 429 for violating *42 U.S.C 1981 and Title VII of the Civil Rights Act of 1964,* for employment discrimination based on the plaintiff's race. Retaliation also occurred after he reported unlawful discrimination and harassment. Defendants' retaliation and discriminatory practices violate plaintiff's federally protected rights. The Plaintiff has the right to engage in

1

protected activity and report racism, bullying, and harassment on the worksite without suffering from retaliation and adverse action.

 The plaintiff's termination from Conti Corp happened immediately after making a verbal complaint about Foreman Jimmy Allen. Allen had an ongoing continuous pattern of bullying and harassing union employees. Allen purposely made racist statements to get Montgomery upset. Allen arrogantly made racially insensitive statements praising the KKK and blatantly disrespected Montgomery. Montgomery told Allen about some of the horrific acts of violence that the Klan committed against blacks; nevertheless, Allen remained unapologetic and stood firm on his racist beliefs. Jimmy Allen told Montgomery that the Klan policed bad people and restored order to the South during the Reconstruction era. Montgomery argued with Allen that the KKK unjustly targeted black people, but Allen remained unapologetic and told Montgomery, "Shut up because you don't know a damn thing about the Klan".

 The argument almost escalated into a physical altercation. While arguing, Allen shouted at Montgomery, "You can Shut up, quit crying, and carry my ladder into the courtroom or go home." Montgomery chose to immediately report Jimmy Allen to the NJACT director Stephen Hall rather than get into a physical altercation with his foreman. Stephen Hall asked Montgomery if he wanted to be moved to a different site.

Montgomery told Mr. Hall it was not fair for him to be removed and transferred since Jimmy Allen was the bully and aggressor. Montgomery told Mr. Hall that Jimmy Allen tried to force him to quit the job however, he wanted to remain at the courthouse and see Allen reproved for his behavior. Mr. Hall decided to call Conti Supervisor, Todd Roberts, regarding the situation. Todd Roberts told Mr. Hall that Jimmy Allen's experience was needed at the courthouse to complete the project. Todd Roberts informed Mr. Hall that he could not afford to discipline Allen prior to the project deadline. Todd Roberts chose to terminate Montgomery's contract against his will instead. IBEW 429 and Conti Corp never called a Union steward to mediate

2

and address the verbal grievance as stated in the Collective Bargaining Agreement. Montgomery's job assignment was illegally terminated without warning and without just cause. Plaintiff was often subjected to psychological damaging statements and belittled in front of other employees. Allen often tried to create feelings of inferiority in Montgomery by telling him to quit because he was not fit to be an electrician. Allen told Montgomery that he was only good for dumping trash and carrying other employees' ladder around. Allen treated Montgomery with less respect than other employees and pressured him to violate OSHA safety regulations. Allen told Montgomery to work in an unsafe manner on various occasions and he refused to give him any training. On May 26 2021, Jimmy Allen tried to force Montgomery to run down the unfinished stairway of the federal courthouse. No other employees for IBEW 429 and Conti Corp were ever pressured to run down stairs except Montgomery. When Plaintiff refused to run, Allen got angry and told the plaintiff that he was sorry, lazy, and sucked as a helper. Allen created an environment that would create hostility for any reasonable person to work in. Montgomery was terminated and his job assignment ended abruptly on May 26, 2021. Union CBAs prohibit firing employees without warning and fair representation. This has happened to Mr. Montgomery on multiple occasions creating a breach in the IBEW bargaining agreement. The Federal Labor Relations Act prohibits such practices by labor organizations. In the IBEW collective bargaining agreement, there are steps of progressive disciplinary actions, which must occur before union employees can be terminated.

1.) Verbal Warning

2.) Written Warning.

3.) Mandatory disciplinary actions from suspensions to termination.

Mr. Montgomery was unlawfully fired from Conti Corp and Maryland Electric without any warning or fair representation. These actions were done in retaliation to Plaintiff's complaint.

3

## *Parties*

Jeremie Montgomery is a black adult male who resides in Jefferson County, Alabama

Conti Corps Nashville TN location is located at 1269 4th Ave S Nashville TN, 37210.

Conti Corp's main headquarters is located at 6417 Conti Corp Center Drive Sterling Heights, MI 48321

IBEW 429 is the Nashville electrical AFL-CIO union located at 2001 Elm Hill Pike

Nashville TN, 37210

## *Jurisdiction and Venue*

This Venue is proper because Conti Corp and IBEW 429 are located in Nashville TN Most of the events took place inside of the Fred D Thompson Federal Courthouse in downtown Nashville.

4

<u>*Factual Allegations*</u>

1.) Montgomery is a black male who is classified as a CW1 in the AFL-CIO Local Electrical Union of Nashville TN (IBEW 429 Construction Wireman). Montgomery's employment with Conti Electrical lasted from March 3, 2021 to May 26, 2021. During Plaintiff's employment with Conti, he worked inside of the Fred D Thompson Federal Courthouse in Nashville TN as a federal subcontractor.

2.) Montgomery filed a complaint against Defendants to the Tennessee Human Rights Commission and EEOC in May 2021. Montgomery received a right to sue letter from the EEOC September 26.2023. He is within his 90 day filing period. Conti is a commercial and industrial subcontractor. Conti did low voltage electrical and data work inside of the Fred Thompson courthouse. Henzel and Phelps were the general contractors for the Fred D. Thompson project.

3.) Plaintiff's position was covered by a collective bargaining agreement (CBA) between Conti Corp and Electrical Union IBEW 429.

5

4.) CBA agreement stipulates that unionized employees can be fired ***ONLY FOR JUST CAUSE***, and there must be a hearing with a steward or arbitrator present.

5.) Montgomery's job at Conti was terminated against his will on May 26, 2021. Conti listed the termination as a layoff due to lack of work; however, several other Conti employees still had employment after Montgomery was terminated/laid-off. Montgomery was the only federal courthouse worker for Conti whose job assignment ended on May 26, 2021. Montgomery is currently banned from rehire.

6.) Jimmy Allen is Conti Corp's Foreman who supervised the Federal Courthouse project. Allen is an adamant confederate supporter. Allen is also a proud Trump supporter who openly expressed his political views at work.

7.) Allen made statements claiming that Donald Trump was appointed by God to lead the United States of America. Allen also claimed that Barack Obama is the Antichrist of the Bible and Joe Biden is the false prophet. Allen said that the Covid-19 vaccine contained, "The Mark of the Beast", as mentioned in Biblical text. Allen refused to wear mask as mandated at the time because he believed that the Covid-19 pandemic was a conspiracy of the New World Order. Allen became disrespectful and reprimanded Montgomery for openly objecting his ideas. Allen believed that his views were absolute truth.

8.) On one occasion the Plaintiff witnessed an open conversation between Jimmy Allen and 2 other Conti Corp Electricians, Marty and Bart. They were having an open conversation about politics. Jimmy Allen, Marty, and Burt jokingly said that

6

everyone that supported Obama, the Clintons, Nancy Pelosi, or Joe Biden needed to be tied to a tree and beaten with a whip until the skin on their back ripped open from the lashes.

9.) Marty, Burt, and Jimmy also said that they would like to severely beat the liberal politicians with a barbwire whip and watch them die slowly from the infected wounds. They joked about wanting the liberal politicians open wounds to become infected with gangrene after the brutal beating. Montgomery voted for Obama and Biden in 2008 however he remained silent in order to avoid a conflict.

10.) Jimmy Allen worked as a non-union electrician the majority of his electrical career and admitted that he liked non-union companies better. Jimmy Allen said that most IBEW workers were sorry, lazy, and not worth anything.

11.) Allen would often disrespect and bully older union electricians and tells them to retire or leave because they sucked. An older Conti electrician named John experienced so much bullying and harassment from Jimmy Allen that he made a verbal grievance and was forced to transfer to Rosendin Electric. John made a verbal grievance against Allen to IBEW 429 and Conti Corp staff; however they refused to reprove Jimmy Allen for the harassment.

12.) Allen said that the only reason he joined the IBEW was because they have a great pension plan.

13.) Prior to the day of Montgomery's termination, May 26.2021, Montgomery and other employees made verbal complaints to NJACT Director Stephen Hall against

7

Jimmy Allen. Nothing was done and the harassment continued until Plaintiff had enough.

14.) IBEW 429 and Conti Corp policy strictly prohibits the use of hate symbols such as: Nooses, Swastikas, Confederate Flags, KKK propaganda, and anything associated with hate. Comments praising the actions of a hate group fall under this policy. Jimmy Allen was never disciplined or reproved for making insensitive statements about the KKK being a good organization and having a noble cause when it was birthed.

15.) When Montgomery first started with Conti Corp, he introduced himself to Allen and had a brief conversation about Plaintiff's prior electrical work experience.

16.) During the conversation, Montgomery told Allen about racist incidents that occurred at his previous employer, S&W Electrical Contractor. Montgomery told Allen that former co-workers at S&W openly used racial slurs and he was permanently laid off after he opposed the usage of the N-word.

17.) During the above conversation, Allen sympathized with Montgomery's former employer. Allen told Montgomery that their usage of the N-Word to describe bad behavior or a mentality was not racist.

18.) Montgomery disagreed and told Allen that the N-word is a racial slur no matter the context. He also told Allen that some of his ex-co-workers at S&W praised Klan members like Nathan Bedford Forrest and called him a hero. Jimmy Allen responded to Montgomery, "The KKK was a good organization when it first

8

began. "Allen said that media and propaganda painted a bad picture of Nathan Bedford Forrest.

19.) Montgomery then responded," I don't want to deal with any racism at this new job because I just left a company filled with racist people". Allen told Montgomery that he would not say the N-word around him; however, he continued to defend the formation of the KKK during the reconstruction period.

20.) Allen said that the KKK policed and protected the South after the civil war. They restored order and went after bad people and criminals who were in the South.

21.) Montgomery replied to Allen, "The KKK was a Domestic terrorist organization from its birth and they mainly policed and targeted black people". He told Allen that innocent blacks were often murdered and falsely accused of being criminals.

22.) According to the Department of Justice, (justice.gov), the KKK is a white supremacist domestic terrorist hate group that used terror and violence to keep Black Americans from exercising their rights. During the reconstruction period, KKK violence against blacks was so rampant that the federal government created the Justice Department in an effort to protect black citizens and break up the hate group.

23.) *The Ku Klux Klan Act or Enforcement Act* was signed in 1871 by Ulysses Grant to combat the KKK violence that occurred under Grand wizard Nathan Bedford Forrest leadership.

9

24.) Tennessee Governor Bill Lee has declared that a statue of Klan leader Nathan Bedford Forest creates a hostile and intimidating environment for Blacks and other minorities. Tennessee lawmakers voted to remove the statue from the Tennessee State Supreme Court due to the atrocities and violent history of the KKK. The ruling and declaration of the Tennessee State Court regarding the KKK statue can also be applied in this federal situation. Statements inside of a federal courthouse that praise and condone the actions of the KKK are just as offensive as a statue of the grand wizard. Allen was warned about the violent history of the KKK during the early years but refused to recant his comments.

25.) When black plaintiff exercised his rights to verbally object Allen's inaccurate and racist statements he was reprimanded and later terminated.

26.) Allen willingly volunteered his opinions after Montgomery told him about the racism that he experienced at his previous employer, S&W Electrical Contractors. Allen was not forced to give statements about the KKK or usage of the N-word.

27.) Montgomery filed a complaint against former employer S&W Electrical Contractors prior to being hired at Conti Corp. He objected to the open use of the N-Word and other racist comments made by S&W employees. He was reprimanded for recording and reporting employees who used the N-Word. Plaintiff was called a snitch, crybaby, and affirmative action guy by former coworkers at S&W. He faced retaliation and was permanently laid off after filing an EEOC charge of discrimination against S&W.

10

28.)    Jimmy Allen sympathized with Montgomery's former employer S&W Electrical Contractors. After the plaintiff's first conversation with Jimmy Allen, the plaintiff felt very awkward working around Allen. From the first conversation until the end of Montgomery's tenure with Conti Corp the harassment and hostility from Allen increased and it eventually became intolerable.

29.)    On a couple of occasions, Allen tried to force Montgomery to work in a dangerous manner that violated OSHA Safety standards. Allen once told Montgomery to stand on the top platform of a short ladder to run conduit, violating *OSHA standard 1926.1053(b) 13.* Allen told Montgomery to work fast and don't get caught because the conduit had to be installed that day. Conti Corp did not have a sufficient amount of ladders on the jobsite and Allen told Montgomery to ask other contractors if he could borrow their ladders.

30.)    On May 26, 2021, Allen told Montgomery to run down the stairway of the federal courthouse. The stairs were not fully constructed and concrete had not been poured over the top platform. The stairs created a tripping hazard for anyone that walked on them. *refer to OSHA standard 1926.1053(b)13.*

31.)    While at the top of the stairway leading from the penthouse (7th floor), Allen told Montgomery that he moved slowly and needed to move faster.

32.)    Allen told Montgomery to quit dragging his feet and run quickly down the stairs, but Montgomery refused to run.

11

33.) Montgomery told Allen, "Hell No"! "I'm not running down the unfinished stairs because it's unsafe." Wood and metal protruded from each stair frame and there was no concrete foundation.

34.) When plaintiff told Allen, "HELL NO", and refused to run, the foreman became angry. Allen then began to yell at the Plaintiff. "You're going to pick your feet up like me and run down these stairs fast". Montgomery replied to Allen, "You have got to be kidding me". With a serious facial expression Jimmy Allen responded, "I'm not joking or kidding around with you, I'm tired of you dragging your feet". "Today you are going to pick your feet up and run". Montgomery responded, "You're crazy and continued walking down the stairway. There was no fire drill and Allen acted unreasonable toward Montgomery.

35.) Running down stairs and through the construction site was not a part of Montgomery's job duties. Running in this situation would create an unsafe work hazard for plaintiff. Allen had no right to pressure Montgomery to run.

36.) Plaintiff's right to refuse to run down an unfinished stairway that posed a tripping hazard is covered under OSHA. Plaintiff did no wrong by refusing to perform such an unsafe task especially since running is not part of plaintiff's job function.

37.) No employees for Conti Corp and IBEW 429 had been forced to run except Montgomery. Plaintiff was treated differently than other Conti employees that worked at the Federal Courthouse.

12

38.) When Montgomery made his way to the lower floor Allen belittled him in front of other construction workers. Allen tried to bully and pressure the Plaintiff to quit and find a new career.

39.) Allen asked the Plaintiff, "Are you high on crack?" "You always seem very tired and move really slow like you are on drugs".

40.) Plaintiff has never used crack cocaine or any other hard drugs. Plaintiff has narcolepsy, which is a neurological sleeping disorder. Plaintiff was diagnosed in 2012 at the Sleep Disorders Center of Alabama. Symptoms of narcolepsy that Montgomery suffers from include excessive daytime sleepiness, fatigue, sudden sleep attacks, sleep paralysis and sleep apnea. Narcolepsy is covered under the Americans with Disabilities Act (ADA).

41.) On one occasion, Allen told Montgomery that the only thing he was good for was taking out trash and carrying ladders for other employees. He referred to the Plaintiff as, "Slow", and said he sucked as a helper.

42.) Montgomery had not been properly trained in an apprenticeship program like other Conti employees. Montgomery reported this incident to NJACT director Stephen Hall and Conti Project Manager Kevin Ochs. They ignored Montgomery's first verbal grievance and did not discipline Jimmy Allen. During the verbal altercation near the stairway that occurred on May 26, 2021, Allen told Plaintiff to quit and go file for unemployment.

13

43.) Allen told Montgomery to go find a new career. Montgomery replied, "Instead of trying to make me quit and telling me how bad I suck, how about you train me." Jimmy Allen then replied, "If I had to be the one training you I'd have to kill you."

44.) Montgomery responded to Allen, "The only reason that you harass me and try to force me to quit is because you are a racist and you don't like black people."

45.) Allen denied being a racist and replied in a loud voice, "What makes you think I'm a racist!"

46.) Montgomery responded," The racist statements that come out of your mouth is why I think you are a racist." "You constantly harass me and single me out on the jobsite". During the heated argument, Montgomery reminded Jimmy Allen of the prior racist statements he made condoning the actions of the KKK during the reconstruction period.

47.) Jimmy Allen reiterated, "I only said that the Klan was good in the beginning when they first organized, but not now."

48.) Montgomery argued with Allen that the KKK was just as evil in the beginning as it presently is today. Montgomery also told Allen about the bombings and other horrific atrocities that were done by the KKK.

49.) Even though the plaintiff explained facts to Allen, Allen refused to apologize and stood firm on his position. Allen yelled at Montgomery, "Shut the hell up and get back to work because you don't know a damn thing about the Klan!"

14

50.) Allen then shouts at Montgomery, "I meant what I said about the Klan so you can shut up". "Quit crying and arguing about it". "You can either carry my ladder into the courtroom for me or go home."

51.) At this moment the working environment became too hostile and intolerable for Montgomery to endure. Instead of letting the incident escalate into a physical altercation, Plaintiff chose to immediately report the incident to the NJACT Director Stephen Hall.

52.) After reporting the incident to Mr. Hall, Conti Corp Regional Supervisor Todd Roberts told Stephen Hall to terminate Montgomery's job because the Federal courthouse project was nearing its completion. Jimmy Allen was not disciplined nor was his work interrupted. Jimmy Allen was not questioned by Conti until the THRC contacted Conti Corp about the incident.

53.) Stephen Hall told Montgomery that he could offer him another job with Maryland Electric but he would have to sit at home for a week without pay.

54.) Montgomery rejected this idea because Maryland Electric did not offer much per diem and overtime like Conti Corp. Montgomery told Mr. Hall that he should not have to transfer or be removed from the site since Jimmy Allen was the bully and aggressor. Montgomery said that he wanted to stand his ground and remain at the courthouse because Allen was trying to intimidate him into quitting. He demanded that Allen be reproved immediately to stop the harassment. Todd Roberts decided to terminate Montgomery's assignment instead of reproving Allen

15

for his behavior. Once plaintiff's job was terminated without just cause, he had no choice but to accept a job offer from Maryland Electric.

55.) After the Plaintiff engaged in protected activity, he was the only Conti Corp employee who was terminated without warning from the federal courthouse on May 26, 2021.This was not a layoff nor was it voluntary.

56.) During Montgomery's termination, there was no union steward available to speak on Montgomery's behalf. His unlawful termination breached the IBEW CBAs and violated federal law that protects workers from discriminatory practices and retaliation.

57.) Montgomery filed a complaint to THRC against IBEW 429 and Conti Corp in May 2021. In Conti Corp's rebuttal statement to the THRC, they admitted that Jimmy Allen had an argument with Montgomery over the KKK. Conti Corp said there was nothing racist about Allen's statements. Jimmy Allen admitted to calling the KKK a good organization when it first started to THRC investigator, Shelbea Cooley. In the rebuttal statement, Conti Corp claims that Allen meant no harm and was only explaining history.

58.) When Montgomery opposed and objected to Jimmy Allen's statements using facts he was reprimanded. In Conti Corps rebuttal statement they said that Montgomery created the argument by opposing Jimmy Allen's views and made exaggerated claims of racism against the company. Montgomery should have been allowed to speak the truth without retaliation.

16

59.) When Montgomery told IBEW 429 President Kim Samson about the incident, she told Montgomery that Tennessee is an *AT-WILL* state. She stated that Conti Corp and other IBEW contractors don't need a just cause for termination even if its discriminatory. Kim Samson also told Montgomery that workers couldn't file grievances at IBEW Local 429. She told Plaintiff that the only thing he could do is, "Raise hell", if discrimination occurs. Ms. Samson represents the views and practices of all union contractors as President of IBEW 429. She admits that there are racist, homophobic, and sexist people in IBEW Local 429, but there is nothing that she could do about it. She advised Montgomery to go join another union in another state.

60.) An anonymous Conti Corp employee gave a sworn witness testimony to THRC investigator Shelbea Cooley. In the witness statement, he supports Montgomery's claim of discrimination and admits that racial jokes about Hispanics are frequently made on the jobsite. He says that racism is, "the culture of the trade", because it is so prevalent among employees. In the construction industry, racism has been normalized due to the frequency and silence of employees.

<u>*CAUSE OF ACTION*</u>

**COUNT 1: DISCRIMINATION**

1.) Plaintiff includes the facts in the above paragraphs, Section 1981 provide "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other." 42 U.S.C 1981(a)

17

2.) "For the purposes of this section the term make and enforce contracts includes the making, performances, modification, and termination of contracts and the employment of all benefits, privileges, terms, and conditions of the contractual relationship."1981(b)

3.) It is a violation of 1981 for an employer to discriminate against employers on the basis of their race, to pay employers unequally based on their race, or to retaliate against employees for opposing such discrimination.

4.) In reviewing hostile work environment claims the courts must consider "the totality of circumstances" and it should not "carve the work environment into a series of discrete incidents and then measure by the harm occurring in each episode, "Jackson v. Quanex Corp.191 F.3d 647,660(6th Cir.1999).

5.) By discriminating against plaintiff and creating a hostile work environment based on Plaintiff's race, Defendants violated Section 1981

6.) By providing Plaintiff fewer financial opportunities than similarly situated white and non-black employees on basis of his race, Defendants violated Section 1981.) By forcing out and/or deliberately creating intolerable working conditions for Plaintiff on the basis of his race, Defendants violated Section 1981.

18

7.) Defendants violated Section 1981 when Conti Corp terminated Montgomery after he reported racism and asked for a work environment free of discriminatory and harassing comments.

8.) Constructive Discharge under Title VII of the Civil Rights Act of 1964 allows Plaintiffs to recover damages if the employer creates a working environment so intolerable that the worker is forced to resign due to the hostile working environment.

9.) Due to the severe harassment and racial comments made by Allen, any defensive argument that Montgomery voluntarily resigned is pretext and irrelevant in this case…Refer to case law Green vs Breenan.

10.) Defendants discriminated against Montgomery intentionally and acted maliciously with and/or reckless indifference to Plaintiff's rights.

11.) As a direct and proximate result of such actions, Plaintiff has been and will be in the future deprived of income in the form of wages and prospective benefits because of Defendants' conduct. When Montgomery complained to his supervisors and directors within the IBEW, he was immediately terminated without warning or just cause. Defendants acted maliciously and with reckless indifference to Montgomery's rights as an IBEW worker covered under IBEW AFL-CIO collective bargaining agreements. As a direct result of the defendants' actions, Plaintiff has been and will be in the future,

19

deprived of income in the form of wages and prospective benefits because of Defendants' conduct.

## COUNT 2: RETALIATION

Defendant retaliated against Plaintiff for engaging in protected activity. Plaintiff engaged in protected activity by bringing complaints of racist behavior to Conti Corp and IBEW 429 supervisors. When Montgomery complained to his supervisors and directors within the IBEW, he was immediately terminated without warning or just cause. Defendants acted maliciously and with reckless indifference to Montgomery's rights as an IBEW worker covered under *IBEW AFL-CIO* collective bargaining agreements. As a direct result of the defendants' actions, Plaintiff has been and will be in the future, deprived of income in the form of wages and prospective benefits because of Defendants' conduct.

## COUNT 3: BREACH OF UNION CBA

1.) The Labor Management Relations Act (LMRA) allows unionized employees to bring civil action against their union for violating union contracts and agreements (CBAs), under Section 301 (29 U.S.C. SECTION 185).

2.) IBEW 429 acted in bad faith and breached the duty of fair representation.

3.) Under law an employer may not discharge an employee governed by a collective bargaining agreement unless just cause exist for the employee's dismissal.

20

4.) The Defendants' blatantly ignored multiple complaints and grievances against Conti Corp's Foreman Jimmy Allen. They failed to discipline Jimmy Allen and address complaints made by other union members against Allen as well. They acted in bad faith and enabled the illegal harassment by Foreman Jimmy Allen.

5.) Montgomery was terminated by the defendants for engaging in protected activity and making a verbal grievance against Jimmy Allen.

6.) IBEW 429 president, Kim Samson, said that since Tennessee is an AT-WILL state, they do not have to honor CBAs and agreements. Kim Samson says that IBEW contractors in Tennessee *do not have to have a just cause for terminating employees.* She told Montgomery to go join another union in another state if he is concerned about racism.

7.) IBEW 429 president told Montgomery that he could not file a grievance even if he was terminated for discriminatory reasons.

8.) Defendant acted maliciously and/or with reckless indifference to Montgomery's rights. As a direct and proximate result of such actions, Plaintiff has been, and will be in the future deprived of income in the form of wages and prospective benefits because of Defendants' conduct.

21

## *PRAYER FOR RELIEF*

Based on the foregoing, Plaintiff prays for the following relief:

1.) Declaratory Judgment as Prevailing Party;

2.) an award of back pay that includes all forms of compensation and reflects fluctuations in working time, overtime rates, sunday premium and night work, changing rates of pay, transfer, promotion, and all benefits broadly to include annual leave, sick leave, health insurance, and retirement contributions.

3.) Reinstatement of Union membership;

4.) Front pay if no position available or subsequent working relationship between the parties would be a conflict or the employer has a long-term resistance to discriminatory efforts;

5.) Pre and Post judgment interest;

6.) Compensatory damages for past and future pecuniary and non-pecuniary losses;

7.) Punitive damages;

8.) All court cost, litigation fees and expenses for this action;

9.) Enough to cover tax liability for lump sum payments;

10.) Injunctive relief banning Defendants from engaging in discriminatory practices against other employees and violating union worker's rights as listed in CBA agreements;

11.) All equitable relief that Plaintiff is entitled to;

22

Respectfully Submitted by Pro Se Plaintiff,

Jeremie Montgomery

3069 Panorama E. Apt G

Birmingham, AL 35215

812-459-3264

jaygump777@gmail.com

*Jeremie Montgomery*

*Jeremie Montgomery*

23