# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JEREMIE MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-01262** |
| | ) | **Judge Aleta A. Trauger** |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRIAL WORKERS AFL-CIO** | ) | |
| **(IBEW) Local 429 and** | ) | |
| **CONTI CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiff Jeremie Montgomery brings claims against his former employer Conti Corp. ("Conti") and against the International Brotherhood of Electrical Workers (IBEW) Local 429 ("Local 429" or "Union"), asserting against both race discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, as well as a claim for breach of the collective bargaining agreement ("CBA") between Conti and Local 429 under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 183. (Doc. No. 1.)

The Union filed a Motion to Dismiss all claims against it (Doc. No. 12), which the plaintiff opposed. (Doc. No. 14.) After the Union filed a Reply (Doc. No. 16), the plaintiff submitted six additional filings in response to the motion, for the most part reiterating the allegations in his Complaint. (Doc. Nos. 17, 24, 29, 33–35.) The case was referred to the Magistrate Judge for a recommended disposition on all dispositive motions. (Doc. No. 7.)

The Magistrate Judge has issued a Report and Recommendation ("R&R") (Doc. No. 36), recommending that the Union's motion be granted and that all claims against that defendant be

dismissed. Now before the court are Montgomery's Objections (Doc. No. 37) and Memorandum of Law (Doc. No. 38), specifically objecting only to the dismissal of his claims against the Union for discrimination and retaliation under 42 U.S.C. § 1981. The Union filed a Response to the Objections (Doc. No. 39), and Montgomery filed a Reply (Doc. No. 40).

For the reasons set forth herein, the court is persuaded in part by the plaintiff's Objections to the dismissal of his discrimination claim against the Union under § 1981. Accordingly, the court will accept in part and reject in part the R&R and will grant in part and deny in part the Union's Motion to Dismiss.

## I.    BACKGROUND

Without actually distinguishing between the defendants, the Complaint alleges that Montgomery is Black and that he suffered race discrimination (disparate treatment), retaliation, and a hostile work environment while he was employed by Conti as an electrician on the construction of the federal courthouse in downtown Nashville, Tennessee and then terminated in 2021. (Complaint, Doc. No. 1.) The Complaint also alleges that Montgomery was a member of Local 429 and that his employment by Conti was covered by a CBA between Conti and Local 429.

In support of his claims against the Union, Montgomery alleges that, as a union member, he could not be terminated without just cause. (*Id.* at 11–12.) He claims that he was terminated in May 2021 and that, just prior to his termination, he had complained to Conti supervisors and a Union representative about racist comments and conduct by his direct supervisor, Foreman Jimmy Allen, after which the plaintiff was allegedly reprimanded and terminated. Although Montgomery complained to the Union about the racist comments and conduct he had experienced just prior to his termination, "there was no union steward available to speak on Montgomery's behalf" during his termination. (*Id.* at 22 ¶ 56.) When the plaintiff told Local 429 President Kim Samson about being terminated in retaliation for complaining about his supervisor's racist treatment, she told

him that he could not file a union grievance about the incident, because Tennessee is an "at-will" state. (*Id.* at 23 ¶ 59.) She admitted that there are "racist, homophobic, and sexist people" at Local 429 but stated that there was "nothing she could do about it." (*Id.*) She advised Montgomery to join another union in another state. (*Id.*) Montgomery points to Samson's statements specifically in support of his LMRA claim, asserting that they show that the "Defendants" generally "blatantly ignored multiple complaints and grievances against Conti Corp's foreman Jimmy Allen" and, in doing so, "acted in bad faith and enabled the illegal harassment by Foreman Jimmy Allen." (*Id.* at 27 ¶ 4.)

Conti filed an Answer to the Complaint, but the Union filed its Motion to Dismiss instead. The Union argues that (1) the only clearly discernable claim against it is the claim under § 301 of the LMRA, but that claim is barred by the six-month statute of limitations; (2) because the Union did not employ the plaintiff, the only possible claim he can bring against it under either Title VII or § 1981 is a "duty of fair representation claim," but that claim fails because the plaintiff fails to allege facts suggesting that Local 429 "acted with discriminatory animus." (Doc. No. 13, at 2.)

The R&R largely agrees with the Union. It finds that, because the Complaint fails to allege facts showing that the Union employed the plaintiff or had anything to do with his termination (for purposes of his discrimination or retaliation claims) or the creation of a hostile work environment, the Title VII/Section 1981 claim against the Union can only be construed as a claim based on a discriminatory breach of the union's duty of fair representation. (Doc. No. 36, at 7.) The R&R articulates the elements of that claim and finds that the Complaint does not allege any facts suggesting that the Union's actions were motivated by a discriminatory animus. (*Id.*) The R&R also recommends dismissing the LMRA claim as time-barred. (*Id.* at 9.)

## II.  THE OBJECTIONS

Along with his Objections to the R&R, the plaintiff attached sixty pages of "Facts and Exhibits that Support Plaintiff's Claims" (Doc. No. 37-1), and his supporting Memorandum of Law (Doc. No. 38) also incorporates factual allegations that are not included in the Complaint. The Union, in its Response, objects to the introduction of new evidence and also asserts that the plaintiff's objections merely restate arguments already made in opposition to the Motion to Dismiss and "fail to grapple with the relevant law." (Doc. No. 39, at 4.)

As a threshold matter, the court notes that, in reviewing a motion to dismiss under Rule 12(b)(6), it may only consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The court may not consider the additional factual material submitted by the plaintiff—or the new factual allegations in his Objections and supporting Memorandum that are not included in his pleading—without converting this motion into one for summary judgment, which the court declines to do.

Focusing on the substance of the plaintiff's Objections, the plaintiff implicitly concedes that his LMRA claim is time-barred, and he does not expressly object to the dismissal of that claim. (*See* Doc. No. 37, at 9 ("Plaintiff doesn't need to file a claim . . . under § 301 for breach of contract. The breach of contract claim is also covered by 42 U.S.C. 1981. . . . His statute of limitations is extended to 4 years under 42 U.S.C. 1981."); *see also* Doc. No. 38, at 1.) In addition, he implicitly acknowledges that his Title VII claim was not exhausted against the Union, as he argues that § 1981 does not require exhaustion. (*See* Doc. No. 37, at 9 ("Plaintiff's claims filed under 42 U.S.C

1981 does not have to meet the criteria of a Title VII . . . claim. Plaintiff does not need an exhaustion of administrative remedies.").)

Instead, he focuses on his § 1981 claim, asserting that

Supreme court rulings have already set the precedent for this court and ruled that all of plaintiff's claims can be filed under 42 U.S.C. 1981. The supreme court has ruled that claims regarding the enforcement of union contracts, hostile environment, discrimination, and retaliation can all be filed under statute 42. U.S.C. 1981 Plaintiffs claims should not be time-barred under 42. U.S.C. 1981.

(Doc. No. 37, at 10.)

In support of his objection to the dismissal of his § 1981 claims, he argues that he complained to his Union representative, Steven Hall, about Jimmy Allen's behavior and that Hall took no action. (*See* Doc. No. 37, at 7; *see also* Doc. No. 1, at 13–14 ¶ 13.) He also asserts that he was not provided a union steward to represent him before he was terminated. (Doc. No. 37, at 8; *see also* Doc. No. 1, at 22 ¶ 56.) He points to his allegations that Kim Samson confirmed that "discriminatory practices are common at IBEW Local 429." (Doc. No. 37, at 8; *see also* Doc. No. 1, at 23 ¶ 59.) He asserts that her claim that he could not file a grievance based on discriminatory treatment was "purposely" intended to "mislead and deceive" him and that filing a grievance challenging racism is a "BASIC RIGHT of ALL union employees." (Doc. No. 37, at 9.) He asserts that her statements to him establish her bad faith and was blatantly intended to deny him his "basic rights to oppose bigotry within the union." (*Id.*)

Montgomery also claims that Samson's statements are evidence of retaliation, as they constitute an "attempt to deter a reasonable employee from reporting harassment and discrimination." (*Id.* (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).) In further support of his retaliation claim, however, he fails to distinguish between the two defendants. He asserts that he engaged in protected activity, that his protected activity was known to the "defendant," that the "defendant" took a materially adverse action against him, and that the causal

connection between these events is established by the fact that he was "terminated at the exact same time that he complained about Jimmy Allen's harassment and racist comments." (Doc. No. 38, at 2.) He does not attribute any of these actions to the Union. (*See id.* at 4 ("Plaintiff was terminated/laid [off] because of a conflict between him and the foreman. Plaintiff was in the process of verbally complaining about Allen's racism and bullying on May 26, 2021.").)[1]

Finally, Montgomery reiterates the facts alleged in his Complaint to support his claims of race discrimination and harassment, and he suggests that the Union should be liable for these acts simply because "President Kim Samson acted in bad faith by blatantly denying union members their basics rights to oppose bigotry within the union. These basic rights are included in all union contracts and union contractors must abide by these guidelines." (*Id.* at 4–5 (citing 42 U.S.C. § 1981).)

The Union argues in Response that (1) the plaintiff has clearly waived any objection to the dismissal of his Title VII and LMRA claims; and (2) the plaintiff fails to meaningfully contest the R&R's recommendation that his § 1981 claim be dismissed based on the failure to adequately allege discriminatory animus. (Doc. No. 39, at 2.) According to the Union, the plaintiff's allegations show "[a]t most" that the Union did not process his grievance, but "this is not enough to state a claim under § 198[1]." (*Id.*)

---

[1] The plaintiff also adds that he should be permitted under Federal Rule of Civil Procedure 15 to move to amend his complaint if needed. (Doc. No. 38, at 3.) The defendant argues that the court should "deny Plaintiff's request to amend his complaint" as inappropriate in this context. (Doc. No. 39, at 5.) The court will not consider the plaintiff's request inserted in his Memorandum in support of his Objections as a motion to amend. If the plaintiff wants to obtain permission to amend his pleading, he must file a properly supported motion under Federal Rule of Civil Procedure 15(a)(2), along with a copy of the proposed amended complaint as required by Local Rule 15(a).

In his Reply, the plaintiff reiterates his assertions that President Samson's statements to him were intended to "deter members from engaging in protected activity and to keep discriminatory incidents on the hush." (Doc. No. 40, at 2.) He also claims to have the "evidence to prove allegations of direct racism and retaliation if this case is allowed to proceed." (*Id.*)

## III.    STANDARD OF REVIEW

### A.    Objections to a Report and Recommendation

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

However, the district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (issues raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," are waived (quoting *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000))). Likewise, "[a] general objection to the entirety" of a magistrate judge's report and recommendation has the same effect as a complete failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505,

509 (6th Cir. 1991). Finally, arguments made in an objection to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

**B.      Rule 12(b)(6)**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

The court construes filings by *pro se* litigants "'liberally'" and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## IV.    DISCUSSION

The court finds that the plaintiff has waived any opposition to the R&R's recommendation that his LMRA claim be dismissed as time-barred. Moreover, because it is time-barred against the Union, the plaintiff cannot pursue an LMRA claim against Conti either. *Accord Rosario v. Loc. 1106 Transp. Works of Am.*, 29 F. Supp. 3d 153, 160 (E.D.N.Y. 2014) (after finding that the § 301 claim against the employer who filed the motion to dismiss was subject to dismissal with prejudice as time-barred, dismissing *sua sponte* the same claim against the local union). This claim will be dismissed with prejudice.

The plaintiff has also effectively conceded that he failed to exhaust administrative remedies as to the Union, for purposes of his Title VII claims. Moreover, he does not object to the R&R's determination that the plaintiff cannot establish a standard employment discrimination claim under Title VII, because he does not allege facts suggesting that he was employed by the Union or that

the Union was involved in the allegedly discriminatory disparate treatment of the plaintiff or his termination. These claims against the Union are subject to dismissal.

The plaintiff maintains that his retaliation claim under § 1981 should not be dismissed, but the facts to which he points in support of that claim support only his retaliation claim against *Conti*, not against the Union. Because he does not contend that the Union had any participation in his allegedly retaliatory termination, the plaintiff's retaliation claim against the *Union* is likewise subject to dismissal. To be clear, the dismissal of these employment discrimination claims against the Union has no impact on the continuation of the plaintiff's Title VII and § 1981 claims against Conti.

The only meaningful objection the plaintiff raises is to the dismissal of his § 1981 discrimination claim against the Union, which the R&R characterizes as a claim for "breach of the union's duty of fair representation for a discriminatory reason." (Doc. No. 36, at 7.) The plaintiff's objection to the dismissal of this claim, though confused and confusing, is sufficiently specific to merit *de novo* review.

Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006); 42 U.S.C. § 1981. Thus, § 1981 claims have two basic elements: (1) "the plaintiff must possess some contractual right that the defendant blocked or impaired," and (2) the plaintiff must "demonstrate that racial discrimination drove the decision to interfere with these contractual rights." *Williams v. Richland Cty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012). Courts generally review employment-related § 1981 race discrimination claims "under the same standards

as claims for race discrimination brought under Title VII." *Id.* (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.1999); *see also Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016)); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).[2]

To establish a race discrimination claim against a union that does not directly employ the plaintiff, premised on the failure to file a grievance, a plaintiff typically must show that "(1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) the union's actions were motivated by discriminatory animus." *Wimpye v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO/CLC, Loc. Lodge 1943*, No. 1:11-cv-845, 2012 WL 1340363, at *3 (S.D. Ohio Apr. 17, 2012) (citing *York v. AT & T Co.*, 95 F.3d 948, 955–56 (10th Cir. 1996)), *report and recommendation adopted*, No. C-1-11-845, 2012 WL 3070814 (S.D. Ohio July 30, 2012).

The court understands the Complaint as alleging that the Union breached its duty of fair representation—and that it was "motivated by discriminatory animus"—when it did not pursue a grievance related to Montgomery's complaints about Allen's racist comments and about his purportedly retaliatory termination. The Sixth Circuit has explained that "[t]he duty of fair representation does not require that a union fully pursue every grievance filed." *Driver v. U.S. Postal Serv., Inc.*, 328 F.3d 863, 869 (6th Cir. 2003). More specifically, "a union's decision not to pursue a grievance, based on thorough investigation of the employee's complaint and a reasonable

---

[2] Title VII specifically makes it an "unlawful employment practice for a labor organization" to "exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin," and to "cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e–2(c).

conclusion that the complaint does not merit further use of the grievance procedure, does not necessarily violate the union's duty of fair representation" *Id.* (citing *Williams v. Molpus*, 171 F.3d 360, 366–67 (6th Cir .1999) ("[A] union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith.")).

Here, the plaintiff's LMRA claim is time-barred, and allegations that the Union acted in bad faith and breached the CBA by failing to conduct an adequate investigation into his complaints, *per se*, are not sufficient to support Montgomery's claim under § 1981. The operative question is whether the plaintiff's allegations are sufficient to permit a plausible inference that the Union's failure to investigate his complaints was "motivated by discriminatory animus." *Wimpye*, 2012 WL 1340363, at *3.

Construing the *pro se* Complaint liberally, the court finds that they are. As set forth above, the plaintiff claims that he complained about race discrimination, but the Union representative failed to take any action, and the Union president told him he could not file a grievance. While Tennessee is, indeed, an at-will employment state,[3] that does not mean that employers may willfully terminate employees for discriminatory reasons. The plaintiff's allegations are sufficient to establish that the Union understood that Montgomery was complaining about race discrimination and harassment but failed even to conduct an investigation, despite acknowledging that discrimination was a problem. (*See* Doc. No. 1, at 9 ("Mr. Montgomery was unlawfully fired . . . without any warning or fair representation."); *id.* at 13–14 ¶ 13 ("Prior to the day of

---

[3] *See Haynes v. Formac Stables, Inc.*, 463 S.W.3d 34, 36 (Tenn. 2015) ("In Tennessee, the employee–employer relationship is ordinarily governed by the employment-at-will doctrine, 'a long standing rule . . . which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong.'" (quoting *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

Montgomery's termination, . . . Montgomery and other employees made verbal complaints to [Union representative] Stephen Hall against Jimmy Allen. Nothing was done and the harassment continued . . . ."); *id.* at 22 ¶ 56 ("During Montgomery's termination, there was no union steward available to speak on Montgomery's behalf. His unlawful termination breached the IBEW CBAs and violated federal law that protects workers from discriminatory practices and retaliation."); *id.* at 23 ¶ 59 ("When Montgomery told IBEW 429 President Kim Samson about the incident, she told Montgomery that Tennessee is an ***AT-WILL*** state," that "Conti Corp and other IBEW contractors don't need a just cause for termination even if it's discriminatory," that "workers couldn't file grievances at IBEW Local 429," and that "there are racist . . . people in IBEW Local 429, but there is nothing she could do about it"; and she "advised Montgomery to go join another union in another state."); *id.* at 26 ("IBEW 429 acted in bad faith and breached the duty of fair representation," "blatantly ignored multiple complaints and grievances against Conti Cor's Foreman Jimmy Allen," and "acted in bad faith and enabled the illegal harassment by Foreman Jimmy Allen.").) Under the circumstances presented here, the court finds that the plaintiff has plausibly alleged that the Union's failure to investigate his allegations was discriminatorily motivated and that he has stated a colorable § 1981 claim against the Union. The Union's motion to dismiss this claim, therefore, will be denied.

## V.        CONCLUSION

For the reasons set forth herein, the plaintiff's Objections to the dismissal of his § 1981 claim against the Union claim for breach of the union's duty of fair representation for a discriminatory reason will be sustained. Accordingly, the court will reject the R&R, insofar as it recommends dismissal of that claim. In all other respects, the court will accept the R&R and will, accordingly, grant in part and deny in part the Motion to Dismiss.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge