**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JEREMIE MONTGOMERY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3: 23-cv-01262** |
| | ) | **Judge Trauger/Frensley** |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF ELECTRIAL WORKERS AFL-CIO** | ) | |
| **(IBEW) Local 429, et al.,** | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This pro se employment discrimination action is before the court on defendants' motions for summary judgment. Docket Nos. 89, 96. Plaintiff has responded, opposing the motions. The motions are briefed and ready for disposition. Docket Nos. 101-106. For the reasons set forth below, the undersigned recommends defendants' motions for summary judgment be granted in part and denied in part.

## I.     BACKGROUND

Plaintiff Jeremie Montgomery, a former electrical worker for Conti Corporation ("Conti"), brings suit against Conti and the International Brotherhood of Electrical Workers Local 429 ("IBEW," "Local 429," or "Union"), alleging he was discriminated against based on his race, black, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Docket No. 1, pp. 2-4.

Plaintiff alleged the following in his original complaint. He is a black male who worked for Conti from March 3 through May 26, 2021. Docket No. 1, p. 11. During his time working there, he worked inside the federal courthouse in Nashville, Tennessee. Id. He was covered by a collective bargaining agreement ("CBA") with Local 429. Id at p. 12. He was terminated against

his will on May 26, 2021, purportedly for a lack of work. *Id.*

During his employment, Jimmy Allen, his Conti foreman and supervisor, openly expressed his political views at work, disrespected and reprimanded Plaintiff for objecting to Allen's ideas. *Id.* Disagreements between Plaintiff and Allen began when Plaintiff disclosed to Allen certain racist incidents with his former employer. Id. at p. 14  Allen told Plaintiff that he believed upon its inception the KKK was a good organization with a noble cause and that it helped maintain order in the South.  Id. at pp. 14-15**.**  Allen ultimately agreed that "he would not say the N-word around [Plaintiff]." Id. at p. 15.

During the next few months, Plaintiff felt very awkward working around Allen and felt Allen treated him differently from his coworkers. Id. at p. 17.  Matters came to a head on May 26, 2021, when Allen pressured Plaintiff to run down an unfinished stairway. When Plaintiff made his way to the bottom floor Allen tried to bully and pressure him to quit and find a new career. Id. at pp. 18-19.  Before he was laid off, Plaintiff and other employees voiced complaints about Allen to Stephen Hall, Director of Nashville Electrical Joint Apprenticeship and Training Committee ("NJACT"). Id. at pp. 13-14.  Hall asked Plaintiff if he wanted to move to another site, and Plaintiff alleges, "[n]othing was done and the harassment continued until [he] had enough." Id., pp. 14, 21. Later that day, Conti terminated Plaintiff's employment on the grounds that the federal courthouse project was nearing its completion and therefore his work was no longer needed. Id., p. 21. Conti offered Plaintiff another job with Maryland Electric, however, Plaintiff did not like the offer because he would have to remain at home for a week without pay and Maryland Electric did not offer much per diem and overtime like Conti did. Id. Plaintiff complained to Hall that he was being terminated for speaking out against Allen's conduct. Id.

At some time, Plaintiff complained to Local 429 about the incident and spoke with

President Kim Swanson. *Id.*, at p. 23. Swanson advised Plaintiff that Tennessee is an at-will state, and there was nothing she could do about it. He asserts she advised him to join another union in another state. Id.

Plaintiff alleges he filed a complaint with the Tennessee Human Rights Commission ("THRC") against Local 429 and Conti in May 2021. Docket No. 1, p. 11. Plaintiff was issued a notice-of-right-to-sue on September 26, 2023. Id.

Plaintiff alleged his termination constituted unlawful discrimination under Title VII and § 1981 (Count I); Id. at pp. 23-25; retaliation under Title VII (Count II) Id. p. 26; and breach of the CBA under Section 301 of the LMRA (Count III). Id., pp. at 26-27. For relief, Plaintiff seeks damages, reinstatement of his Union membership, and other things. Id., at p. 28.

By order dated September 10, 2024, the district judge dismissed the claims against the Union under the LMRA and Title VII, as well as the retaliation claim against it under 42 U.S.C. § 1981. Docket Nos. 41-42. The district judge held that Plaintiff plausibly alleged a claim that the Union breached its duty of fair representation—and that it was "motivated by discriminatory animus"—when it did not pursue a grievance related to Plaintiff's complaints about Allen's racist comments and about his purportedly retaliatory termination. Id. The district judge stated Plaintiff's allegations were sufficient to establish that the Union understood that Plaintiff was complaining about race discrimination and harassment but failed to conduct an investigation despite acknowledging that discrimination was a problem. Id. The district judge found that Plaintiff had therefore stated a colorable § 1981 claim against the Union. Id.

Plaintiff filed an Amended Complaint, the Operative Complaint now before the court, reiterating the factual allegations of his original complaint. Docket No. 52. In Count I he asserts Conti discriminated against him based on his race and that Conti created a racially hostile work

environment**.** Id. at p. 25. In Count II, he asserts that Conti terminated him in retaliation for complaining to Conti and the Union supervisors about racist behavior at the courthouse workplace. Id, at p. 27. In Count III, he asserts the Union breached its duty of fair representation under the CBA by ignoring complaints and grievances about Conti foreman Jimmy Allen, by failing to discipline him, and by enabling Allen's illegal conduct. Id. at p. 29.

The instant motions followed.

## II.    LAW AND ANALYSIS

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F. 3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F. 3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Cor*p., 475 U.S. 574, 587 (1986)). At this stage, " 'the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.' " Id. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F. 3d at 374 (citing *Anderson*, 477 U.S. at 252).

4

Generally, the court should liberally construe pro se pleadings, holding them to less stringent standards than those drafted by lawyers. *See Williams v. Curtin*, 631 F. 3d 380, 383 (6th Cir. 2011)(cleaned up). Nevertheless, courts are not required to conjure up unpleaded allegations or guess at the nature of an argument. *Brown v. Cracker Barrell Rest.,* 22 F. App'x 577, 578 (6th Cir. 2001*)*. Nor are pro se litigants exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989).

Plaintiff's 33-page Amended Complaint is disjointed and difficult to decipher in many places. Docket No. 52. He cites § 1981 throughout as the basis for his causes of action and makes only one reference to Title VII in his introductory paragraph. Id., at p. 1. However, Plaintiff testified at his deposition that he also brings his claims under Title VII. Docket No. 97-1, at p. 39.

The undersigned will construe Plaintiff's claims under both statutes. The discussion and arguments relative to § 1981 are equally applicable to claims brought under Title VII. See *Noble v. Brinker Int'l, Inc*., 391 F. 3d 715, 720 (6th Cir. 2004) (the elements of a prima facie case and burdens of proof are the same for employment claims stemming from Title VII and § 1981).

### A.     The Union's Motion

In support of its motion, the Union argues Plaintiff's claims for breach of the CBA under § 1981 should be dismissed because: (1) any action or inaction on the part of Stephen Hall cannot be attributed to the Union because Hall is an agent of the NJATC, not the Union; (2) Union representative Jeremy Butler or President Sansom did not file grievance against Conti on Plaintiff's behalf because Plaintiff did not bring his complaint to their attention until well after time limit for filing a grievance under the CBA had lapsed; and (3) Plaintiff has failed to present evidence, direct or otherwise, that Union agents Butler or Sansom, or Stephen Hall, as agent of the NJATC, were motivated by discriminatory animus against Plaintiff in a manner violative of § 1981. Docket No.

90. At pp. 4-5. In support of its motion, the Union submitted its Statement of Undisputed Material Facts, a copy of the CBA, excerpts of Plaintiff's deposition, and the affidavits of Stephen Hall, assistant director of the NJATC; and Kim Sansom, President of IBEW Local 429. Docket No. 91-93.

Plaintiff responded, opposing the motion in two separate filings. Docket Nos. 104, 106. He argues the Union's motion is "insufficient and irrelevant." Docket No. 104, p. 1. He argues he has satisfied the elements for his § 1981 claim. He contends he never received a layoff slip or severance pay when he was involuntarily terminated, nor was he provided a Union steward to represent him. Id. at p. 5. He argues that the weight and relevancy of verbal complaints are not negated just because he was not provided an opportunity to file a written grievance. Id. He argues he was transferred as a direct result of engaging in protected activity. He argues the Union constitution implies that representatives are expected to take appropriate action when misconduct occurs, and that instead of taking appropriate action, Hall subjected him to an adverse action and breached the Union constitution. Id., at p. 7

Plaintiff attached to his response his termination notice; copies of purported social media posts by Jimmy Allen; historical articles about the KKK; copies of defendants' written discovery; and the written deposition of Jeremy Butler, Union representative who oversaw Conti stewards. Docket Nos. 106-1, 4, 5, 6-8 and 9.

The evidence relevant to the Union reveals the following. Local 429 was a party to a CBA entitled "Inside Wiring Agreement" between the East Tennessee Chapter of the National Electrical Contractor's Association ("NECA") effective June 1, 2019, to May 31, 2022. Docket No. 93, p. 1. Conti was also a party to the CBA. Id.

Section 1.05, et seq., of the CBA sets forth a procedure for resolution of all grievances or

questions in dispute between the parties. Section 1.10 states, "Any grievance not brought to the attention of the responsible opposite parties to this Agreement in writing within ten working days of its occurrence shall be deemed to no longer exist." Id. at p. 1.

Section 5.01 of the CBA recognizes the existence of an apprenticeship and training fund known as the Joint Apprenticeship and Training Committee ("NJATC") operated by a board of trustees consisting of an equal number of members appointed by Local 429 and by NECA. Id. at p. 2.

Section 5.06 recognizes the NJATC has authority to make job training assignments and transfer trainees from one employer to another. Id. Section 5.15 of the CBA requires the NJATC board of trustees to operate the NJATC as an independent entity in conformity with ERISA. Id.

Stephen Hall is an assistant director of the NJATC. Id. On behalf of the NJATC, Hall makes job training arrangements and transfers trainees from one employer to another. Id.

Plaintiff was assigned by Hall to work at Conti, where Plaintiff worked from March 3, 2021, through May 26, 2021. Id. On May 26, 2021, Plaintiff spoke with Hall about his concern of being subjected to racism, bullying and harassment by Conti foreman Jimmy Allen. Docket No. 97-1, p. 41. The conversation between them took place after Plaintiff called Hall about the incident, who told him to "just come down and let's talk about it." Id. at p. 48. During the May 26 discussion with Hall at the NJACT school, Hall told Plaintiff he would not continue to work for Conti but would be assigned to another company. Id. at p. 52. During his discussion with Hall, Plaintiff did not ask or suggest that Hall assist him in filing a grievance against Conti. Id. Plaintiff testified at his deposition that he did not consider Hall to be racist. Docket No. 93-1, p. 8.

On May 27, 2021, Hall assigned Plaintiff to work at Maryland Electric, and on June 23, 2021, assigned him to work at Rosendin Electric. Docket No. 93, p. 3. Hall attested in his affidavit

that none of his discussions with Plaintiff, or his job assignments were based on Hall's consideration of Montgomery's race and Hall never used any racist terminology in his discussions with Montgomery. Id.

Plaintiff testified at his deposition that after "some weeks had passed" or "multiple weeks" following May 26, 2021, he asked Jeremy Butler, Union representative, to file a grievance against Conti, but a grievance was never filed. Id.

Approximately two years after his employment with Conti ended in May 2021, Plaintiff spoke with Kim Sansom, President of Local 429. Docket No. 92, p. 1. During this discussion, Plaintiff told Sansom he still had an issue with his employment with Conti which had not been resolved; Sansom told him Local 429 would not file a grievance on his behalf because under the CBA the time for doing so had lapsed. Id. Sansom contends that during her discussion with Montgomery, none of her comments were based on a consideration of Montgomery's race. Id. at p. 2.

Plaintiff asserts the Union breached its duty of fair representation--and that it was discriminatorily motivated--when it did not pursue a grievance concerning his complaints about Allen's racist comments and his purportedly retaliatory termination. To establish a prima facie claim against a union for a breach of its duty of fair representation, a plaintiff must show that (1) the employer violated the CBA with respect to the plaintiff, (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation, and (3) there was some indication that the union's actions were motivated by discriminatory animus. *York v. AT&T,* 95 F.3d 948, 955-56 (10th Cir. 1996) (Title VII claim).

The Union first argues any conduct by Hall, as assistant director of the NJACT, cannot be attributed to the Union. The undersigned agrees. The issue of whether the NJATC is an agent of

the union is established by a factual determination under common law agency principles. *NLRB v. International Broth. of Elec. Workers*, 514 F. 3d. 646, 650-51 (6th Cir. 2008) (addressing threshold question whether the JATC was an agent of the Union; holding that based on the record, court was unable to discern the factual and legal basis for NLRB's determination of agency; remanding and holding that NLRB must articulate and apply recognized principles of agency law before it may assert jurisdiction over an entity that it concludes acts as an agent of the union or employer.) It is undisputed that the NJATC is an independent legal entity. Docket No. 105, p. 3. Plaintiff has not come forth with any factual evidence or legal authority to establish the NJATC is an agent of the Union or that Hall was directed by anyone from the Union. For this reason, any action or inaction by Hall as assistant director of the NJACT, cannot be attributed to the Union.

Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006); 42 U.S.C. § 1981. Section 1981 claims have two basic elements: (1) "the plaintiff must possess some contractual right that the defendant blocked or impaired," and (2) the plaintiff must "demonstrate that racial discrimination drove the decision to interfere with these contractual rights." *Williams v. Richland Cty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).

To establish a race discrimination claim against a union that does not directly employ the plaintiff premised on the failure to file a grievance, a plaintiff typically must show (1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) the union's actions were motivated by discriminatory animus." *Wimpye v. Int'l Ass'n of Machinists &*

*Aerospace Workers*, AFL-CIO/CLC, Loc. Lodge 1943, No. 1:11-cv-845, 2012 WL 1340363, at

*3 (S.D. Ohio Apr. 17, 2012) (citing *York v. AT & T Co.*, 95 F. 3d 948, 955-56 (10th Cir. 1996)),

report and recommendation adopted, No. C-1-11-845, 2012 WL 3070814 (S.D. Ohio July 30,

2012).

The Sixth Circuit has explained that "[t]he duty of fair representation does not require that

a union fully pursue every grievance filed." *Driver v. U.S. Postal Serv., Inc.*, 328 F. 3d 863, 869

(6th Cir. 2003). More specifically, "a union's decision not to pursue a grievance, based on

thorough investigation of the employee's complaint and a reasonable conclusion that the complaint

does not merit further use of the grievance procedure, does not necessarily violate the union's duty

of fair representation" Id. (citing *Williams v. Molpus*, 171 F. 3d 360, 366–67 (6th Cir .1999) ("[A]

union does not have to process a grievance that it deems lacks merit, as long as it makes that

determination in good faith."))

The fact that the Union did not file a grievance against Conti on its own does not create a

presumption that it breached the duty of fair representation. *Wade v. Gen. Motors Corp*., 1997 WL

1764766, at *8 (S.D. Ohio Mar. 17, 1997), *aff'd*, 165 F. 3d 29 (6th Cir. 1998) (union's mere refusal

to file a grievance would not allow a reasonable jury to infer that such refusals were the result of

unlawful discrimination). Similarly, conclusory allegations and subjective beliefs are wholly

insufficient to establish a claim for discrimination. *Smith v. City of Toledo*, 13 F. 4th 508, 519 (6th

Cir. 2021).

The evidence demonstrates that Plaintiff did not bring his complaint about Conti to the

attention of Butler or Sansom until after the time limit for filing a grievance as set forth in the CBA

had expired. Docket No. 105, p. 5. Section 1.10 of the CBA states, "Any grievance not brought to

the attention of the responsible parties to the Agreement in writing within ten working days of its

occurrence shall be deemed to no longer exist." Id. at pp. 1-2. Plaintiff testified at his deposition that he asked Butler to file a grievance after "some weeks had passed" or "multiple weeks" following the May 26, 2021, altercation. Docket No. 105, p. 5. Plaintiff contacted and spoke with Sansom approximately two years later. Id. at p. 5. The Union therefore had sufficient reason to not file a grievance because it was deemed no longer to exist and the time to do so under the CBA had expired. The undersigned concludes the evidence demonstrates Plaintiff cannot establish the first two elements for his claim.

Moreover, Plaintiff has failed to present evidence that that any of the actors--Butler, Sansom, or Hall--were motivated by racially discriminatory animus to support the third element. Even if Plaintiff had presented such evidence of racial animus, the Union had a legitimate non-discriminatory reason for not filing the grievance, the time limit for doing so under the CBA had lapsed.

On this record, the undersigned concludes there are no genuine issues of material fact sufficient for a jury to determine the Union acted with discriminatory motive towards Plaintiff, violating its duty of fair representation. Accordingly, the Union is entitled to summary judgment on this claim.

### B. Conti's Motion

Conti also moves for summary judgment. Conti argues Plaintiff's claims are limited to § 1981. Docket No. 97, p. 14. It argues Plaintiff concedes he is not asserting a hostile work environment claim. Id, at pp. 16-17. It argues Plaintiff's discrimination claim fails because he presented no evidence that he received disparate treatment on Conti's part. Id., pp 20. It argues Plaintiff's claim that Conti retaliated against him by interfering with his subsequent employment fails because he cannot establish the requisite causal connection. Id. pp. 22-23. Finally, Conti

contends it had legitimate, nondiscriminatory and nonretaliatory reasons for his discharge, the near completion of the work at the Nashville federal courthouse, and Plaintiff cannot show pretext. Id. pp. 23-24.

In support of its motion, Conti submitted excerpts of Plaintiff's depositions; excerpts from Conti's Employee Handbook; a copy of Plaintiff's signed acknowledged receipt Conti's Employee Handbook; an Incident Report; and the sworn affidavits of Caitlynn Thompson, Conti Project Manager; and Kelly Podrasky, Conti Human Resources Director. Docket No. 97, 97-1 through 97-6.

Plaintiff responded, opposing the motion, and reiterating the allegations in his Amended Complaint. Docket No. 101. He contends he has adequately asserted his claim; he was terminated within minutes of engaging in protected activity; he was never provided a layoff slip or severance pay upon his termination; and that "records and data" show that other employees with his same classification remained working at the federal courthouse following his termination; and that he was never offered another position at Conti sites. Id. at pp. 2-3.

In support of his response, among other things, he submitted a copy of his notice of termination; responses to written discovery; a copy of Conti's THRC position statement; historical articles about the KKK; and purported social media posts by Jimmy Allen. Docket Nos. 103-1 through 103-6.

Conti filed a reply. Docket No. 108. It argues Plaintiff's job classification has no bearing on the legal arguments in support of summary judgment. Id. at p. 4. It notes that the unrefuted record evidence shows Conti laid off Caucasian employees on a rolling basis, including at least one Caucasian worker the day after Plaintiff's layoff. Id.; Doc. 97-5, Ex. A, p. 6. Conti argues it undisputed that (1) Conti never told Plaintiff he could not work for Conti after his May 26, 2021,

layoff Docket. 97-4, pp. 8, 11; (2) Conti does not choose which Local 429 workers are assigned to its jobs, that decision is made by the Union, Docket No. 97-1, pp. 14-17; Doc. 97-6, pp. 5-6 and (3) Plaintiff and the Union never sought to assign Plaintiff to other Conti jobs. Doc. 97-1, pp. 15-16. Conti argues it never "replaced" Plaintiff, it hired one CW 2, who is Hispanic, approximately four months after Plaintiff's layoff. Docket No. 97-5, p. 7. This worker was chosen and assigned by the Union, not Conti. Doc. 97-1, pp. 14-17. It notes Plaintiff testified that he never sought reassignment to the federal courthouse project. Docket. 97-1, pp. 14-15.

Conti notes Plaintiff relies on "facts" without providing any supporting citations to admissible evidence, as well as his amended complaint, which is not admissible evidence and cannot be used to create a material factual dispute for purposes of summary judgment. See Fed. R. Civ. P. 56. Conti notes Plaintiff fails to cite to admissible evidence showing Conti has mischaracterized his testimony. It complains Plaintiff has provided no foundation for his historical articles and they are therefore inadmissible. Docket No. 108, p. 5. It argues Plaintiff's screen shots purportedly from Jimmy Allen's social media account are hearsay and unauthenticated. Id. at p. 6. It argues Plaintiff has otherwise provided no evidence and no record citations to support his dispute, and therefore these facts must be considered undisputed by the Court for purposes of summary judgment.

The undersigned agrees that much Plaintiff's proffered evidence is inadequate for purposes of summary judgment. See Fed. R. Civ. P. 56(e) ("Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists."); *Bryant v. Com. of Ky.*, 490 F. 2d 1273, 1275 (6th Cir. 1974) (conclusory and unsupported allegations rooted in speculation do not meet the nonmoving party's burden under FRCP 56).

The evidence proffered by Conti reveals the following. Conti is a commercial and industrial building contractor. Plaintiff began work for Conti as a Construction Wireman 1 ("CW 1"), an electrician position, starting around March 3, 2021, for work on its project at the Nashville federal courthouse. Docket No. 97-1, pp. 4-5.

Conti EEO Policy in its Employee Handbook states:

> The Company will not discriminate against any applicant for employment or employee because of race, color, religion, sex, national origin, ancestry, age, physical or mental disability, genetic information, veteran status, or any other category protected by applicable federal, state, or local law.

Docket No. 97-2, p. 3. Conti also maintains an Anti-Harassment Policy which states that Conti "has a policy of *zero tolerance* for any form of harassment based on protected status." Id. (emphasis in original). Conti's Complaint Reporting Procedure provides employees with notice on how to report harassment, discrimination, and retaliation. Id. at p. 3. On March 3, 2021, Plaintiff received and acknowledged receipt of a copy of Conti's Employee Handbook. Docket No. 97-3, p. 2.

Plaintiff testified at his deposition that there were three occasions when he experienced purportedly racist comments while working for Conti, all from coworker Jimmy Allen. Docket No. 97-1, pp. 23-27. The first occurred shortly after Plaintiff began working for Conti. Id. Plaintiff alleges that Allen said, among other things, that "the KKK was a good organization when it first began." Id. at p. 26. Plaintiff testified that did not report the incident to Conti using its Complaint Reporting Procedure or otherwise. Docket No. 97-1, pp. 33-34. The second occasion allegedly took place approximately one month after Plaintiff started working for Conti. Plaintiff testified he overheard a conversation between Allen and other Conti employees during which they joked about whipping and beating liberal politicians. Id. at pp. 28-29. At the time of the first two occurrences, Allen was not Plaintiff's supervisor. Docket No. 97-4, p. 6.

14

The third incident occurred the morning of May 26, 2021. Docket No. 97-1, pp. 37-38. Plaintiff and Allen, who was then foreman for the federal courthouse project, had a verbal argument. Id. at pp. 44-45. Plaintiff contacted Caitlyn Thomson, Conti's Safety Manager, to report the incident. Thompson summarized her phone conversation with Plaintiff from contemporaneous written notes during their conversation,  Thompson stated:

> According to Jeremie, the verbal altercation happened around 8:30 a.m. after Jimmy Allen began critiquing Jeremie's work. Jeremie states that Jimmy often makes comments about his lack of production and skills vocally to Jeremie himself and to fellow coworkers and that today Jeremie "called him out" about doing it which lead (sic) to a verbal argument which ultimately resulted in Jimmy leaving the site and contacting the local IBEW 429.
>
> During our conversation, Jeremie stated that Jimmy talks down to him, harasses him and attempts to embarrass him about his skill set and his mistakes due to him being new to the electrical trade,  Jeremie states that Jimmy often watches him while he is working and "knit (sic) picks" his work. Jeremie feels that Jimmy is doing this because he believes Jimmy to be racist.  Jeremie stated that while on the phone that Jimmy is a "racist, intolerant, close-minded republican."  He states that he believes Jimmy is racist due to a previous conversation that was had, prior to Jimmy Allen becoming a foreman, in which they were discussing politics and ended up talking about the KKK, to which Jimmy supposedly stated that the KKK was good organization when it first started.
>
> Jeremie also stated that Jimmy although (sic) he feels Jimmy is particularly hard on him that he is hard on others as well.  He stated that Jimmy "doesn't know how to treat or talk to people."  Jeremie also mentioned that Jimmy often disrespects the union, calling union members lazy.  Jeremie stated that both the African American as well as the white employees complain about Jimmy's attitude.

Docket No. 97-4, p. 6.

Plaintiff testified that Allen humiliated him and asked him if he was high on crack in front of other workers, which led to a heated exchange between the two, during which Plaintiff accused Allen of being a racist. Docket No, 97-1, p. 45.  Plaintiff testified that he was the first to bring up race during this argument, not Allen, and that he decided to voluntarily leave the worksite. Id., p. 46.

Before leaving the courthouse worksite Plaintiff reported the incident to Steven Hall who told him to come down to the hall to "talk about it." Id. at pp. 48-50. During the meeting Hall called Todd Robert, Conti's Director of Operations for Nashville, and Allen's supervisor, to ask him what to do. Id. at p. 50. Plaintiff testified that he could hear only Hall's side of the conversation, not what Robert was saying. Id. He testified that that he did not know if Conti and the Union ever discussed transferring him to a different Conti worksite. Id., at p. 52. Plaintiff told Hall that he would not return to work on the courthouse project until the issues with Allen were "resolved," but that they never tried to mediate or resolve the matter. Id. at pp. 51-54. He testified he wanted an apology from Allen and for Allen to change his behavior. Id. at pp. 54-55. Because Plaintiff would not return to the courthouse project at that time and Conti was winding down the project, including laying off other workers, Conti chose to lay off Plaintiff. Docket No. 97, p. 13. The IBEW and Plaintiff understood that Plaintiff would work at a different contractor. Docket No. 93-2, p. 8. The Supervisor's Report of Incident, signed by Thompson, states in part: "Jeremie willingly left the site and reported the incident to the local IBEW 429. Jeremie also reported that he felt that the (sic) Jimmy's action against Jeremie were race related which prompted an investigation by the Safety Department. … Jeremie opted to leave Conti and pursue immediate employment with another Union electrical contractor. Jimmy Allen's repercussions are still being determined." Docket No. 97-4, p. 8.

The next day, May 27, 2021, the Union referred Plaintiff to a different contractor, and Plaintiff began work with that employer within a week after he was laid off. Docket No. 93-2, p. 8. Conti did not bar Plaintiff from working for Conti and expressly informed him that he was laid off--not discharged--from Conti. Docket Nos. 97-1, p. 77, 97-4, p. 11. Plaintiff did not reapply to Conti or contact them directly about other job opportunities. Docket No. 97-1, p. 15.

In May 2021, Conti laid off other electrical workers during the same period as Plaintiff's layoff, including a Caucasian employee, on May 27, 2021, who held the same position/classification as Plaintiff. Docket No. 97-1, at p. 3.

Thompson attested in her affidavit that she opened a routine investigation into Plaintiff's complaint. Docket No. 97-4, p. 3. Following the investigation, Conti directed Allen to take diversity and inclusion training. Id. at p. 4. Conti did not discipline Plaintiff in relation to the May 26, 2021, incident. Id.

Prior to May 26, 2021, Plaintiff had not complained to anyone at Conti about Allen making racist comments or any instances of alleged harassment or discrimination. Docket No. 97-1, pp. 33-34

### 1.    Count I - Claims based on Discrimination and a Racially Hostile Work Environment against Conti

In Count I of his Amended Complaint Plaintiff asserts his termination by Conti constitutes unlawful discrimination. Docket No. 52, pp. 24-26. Plaintiff is not clear as to whether he brings the claims under Title VII or § 1981, therefore the Court will construe the claims as arising under both statutes. Regardless, the substantive analysis of discrimination and retaliation claims brought under. . . § 1981 mirrors that for a Title VII claim. *Hollywood v. United Parcel Service, Inc.*, 2021 WL 1244312, at *5 (M.D. Tenn. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 1238414 (M.D. Tenn. Apr. 1, 2021) (Trauger, J.).

Title VII prohibits, broadly speaking, "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). The prima facie elements of a discrimination claim under Title VII are plaintiff (1) is a member of a protected group; (2) was subjected to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by a person

outside the protected class, or a similarly situated non-protected employee was treated more favorably.' " *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 921 (W.D. Tenn. 2011) (quoting *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 501 (6th Cir. 2010)). The elements of a prima facie case are not inflexible and vary slightly with the specific elements of each case. *Breeding v. Arthur J. Gallagher and Co*., 164 F. 3d 1151, 1156 (8th Cir. 1999).

If a plaintiff can establish a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant employer satisfies its burden, the burden of production shifts back to the plaintiff to demonstrate that the defendant employer's proffered reason was a mere pretext for discrimination. *Id.*

Here, according to Conti it had legitimate non-discriminatory reasons to terminate Plaintiff; Plaintiff would not return to work with Allen, the federal courthouse project was winding down, and Conti laid off Plaintiff so that he could go work for a different contractor. Docket No. 97-1, p. 22. Plaintiff testified at his deposition that Conti never told him he was barred from working for Conti. Id. at p. 17. Caitlyn Thompson informed Plaintiff in a text message that he was not discharged and could continue to work at Conti. Docket No. 97-4, p. 4. Plaintiff does not refute that Conti never told Plaintiff he could not work for Conti. Docket No. 97-1, p. 17. Because Conti has met its burden of proving that it had no racial or retaliatory animus related to Plaintiff's layoff, and Plaintiff has not satisfied his burden of proving pretext, Plaintiff's discrimination claim should be dismissed.

To the extent Plaintiff is alleging he was subjected to a racially hostile work environment by Conti, this claim fails. A claim of a racially hostile work environment is actionable under § 1981 and is evaluated under the same standard that is used to evaluate hostile work environment

claims under Title VII. *See Long v. Ford Motor Co.*, 193 Fed. App'x. 497, 501 (6th Cir. 2006). A plaintiff establishes a prima facie claim for hostile work environment by showing (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based upon his protected status; (3) the harassment created a hostile work environment; and (4) the employer is liable. *Hafford v. Seidner*, 183 F. 3d 506, 512 (6th Cir.1999). In determining whether there is a hostile work environment, the court considers the totality of the circumstances, including the frequency of the conduct, its severity, and the degree to which it interferes with work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993). A work environment is hostile if, from an objective and subjective perspective, the harassment is severe or pervasive enough that an "abusive" working environment is created. *Bowman v. Shawnee State Univ.*, 220 F. 3d 456, 463 (6th Cir. 2000). If the hostile work environment is created by a supervisor with authority over the complaining employee, the employer is vicariously liable for the hostile work environment. *Clark v. United Parcel Service*, 400 F. 3d 341, 348 (6th Cir. 2005).

As previously stated, Plaintiff complains about three instances where Allen allegedly made racial comments. Docket No. 97-1, pp. 23-30. The first and second occurrences do not support a hostile work environment claim because these incidents did not involve Allen or anyone else making comments to or about Plaintiff pertaining to his race. The first occurrence involved a general discussion about the history of racism and the KKK and the second occurrence involved Allen and two other Conti electricians "jokingly" saying that liberal politicians should be tied to trees and whipped. Id., p. 23. At the time of these two occurrences, Allen was not Plaintiff's supervisor. Docket No. 97-4, p. 6. Plaintiff testified that he did not report the first occurrence to Conti management until May 26, 2021. Docket No. 97-1, pp. 33-34.

Conti cannot be held liable for these incidents of alleged harassment under these

circumstances. *See Barrett v. Whirlpool Corp.*, 556 F. 3d 502 (6th Cir. 2009) (for alleged harassment by non-supervisors, a plaintiff must prove that the employer knew or should have known about the harassment and failed to take prompt and appropriate corrective action); *Clark v. United Parcel Serv., Inc.,* 400 F. 3d 341, 352 (6th Cir. 2005) ("Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability") (internal citations omitted).

With respect to the third incident, Plaintiff testified that he initiated the topic of race during his argument with Allen by calling Allen a racist. Docket No. 97-1, p. 45. The other instances of Allen's alleged race-based harassment do not support a prima facie case because there is no evidence in the record to support the argument that any of the alleged conduct by Allen, including "nit-picking" Plaintiff's work, criticizing his work, or being hard on him, had anything to do with Plaintiff's race. Moreover, Plaintiff does not allege that Allen made any racial comments connected with this conduct. Docket No. 97-4, p. 6. Plaintiff further testified that Allen harbored animus towards IBEW electricians in general and similarly insulted other employees regardless of their race. Id.

These circumstances are insufficient to establish a race-based hostile work environment claim under § 1981 or Title VII. Considering the totality of circumstances, specifically, over an approximately three-month period, Plaintiff and Allen had a discussion about the history of the KKK, Allen made a joke about liberal politicians that could be interpreted as covertly racist, Allen criticized Plaintiff's and other Union employees' work, Allen generally had an unprofessional and poor demeanor and attitude, and finally an altercation between Plaintiff and Allen at which Plaintiff called Allen a racist. The undersigned concludes the alleged harassment was nowhere severe or pervasive enough that a racially "abusive" working environment was created. *See*

*Bowman v. Shawnee State Univ.*, 220 F. 3d 456, 463 (6th Cir. 2000). Accordingly, assuming Plaintiff alleged a racially hostile work environment claim. On this record, he has failed to establish a prima facie case.

### 2. Count II - Retaliation Claim Against Conti

In Count II, Plaintiff asserts Conti retaliated against him for engaging in protected activity when he brought complaints of racist behavior to Conti and Union supervisors and was immediately terminated without warning or just cause. Docket No. 52, pp. 27-28. He alleges Conti targeted or blackballed him after his layoff, citing terminations from subsequent jobs with other contractors and unrelated to Conti, and denied entry into a Union apprenticeship program. Docket No. 97-1, pp. 8-13.

To establish a prima facie case of retaliation under Title VII, a plaintiff must establish: (1) he engaged in activity protected by Title VII; (2) his exercise of protected activity was known by the defendant; (3) the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Passmore v. Mapco Express, Inc.,* 447 F. Supp. 3d 654, 668 (M.D. Tenn. 2017). A claim of retaliation under Title VII is not based upon discrimination, "but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination. *Haas v. Kelly Servs., Inc.*, 409 F. 3d 1030, 1036 (8th Cir. 2005) abrogated in part on other grounds by *Torgerson v. City of Rochester*, 643 F. 3d 1031 (8th Cir. 2011). Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med, Ctr. v. Nassar*, 570 U.S. 338 (2013).

Here, HR director Kelly Podrasky attested in her affidavit that at the time of Plaintiff's

layoff on May 26, 2021, Conti was winding down its work on the federal courthouse and regularly laying off workers. Docket No. 97-4, p. 3, Exhibit A. Conti laid off other electrical workers within days of Plaintiff's layoff, including a Caucasian employee with the same job classification as Plaintiff, on May 27, 2021, the day after Plaintiff's layoff. Id. at pp. 6-7. Conversely, Plaintiff testified at his deposition that he does not have direct knowledge of Conti's staffing, hiring, and layoffs at the federal courthouse project, and therefore he could not reasonably refute Conti's evidence. Docket No. 97-1, pp. 14-17. Plaintiff also testified that other electricians working for Conti at the federal courthouse and other projects could have all been apprentices, journeymen, and other positions for which he was not qualified. Id. at pp. 18-19

There is sufficient evidence for Plaintiff's retaliation claim to proceed with regard to his layoff. The evidence in the record establishes that Plaintiff first complained to Conti about discrimination on May 26, 2021. Docket No. 97-4, p. 2. On that very same day in response to the complaint Plaintiff was laid off. Id. While Conti claims "Mr. Montgomery chose to be laid off from Conti so he could work for a different contractor," this was not a true choice. Docket No. 97-4, pp. 3, 8. Conti provides no alternatives that they made available to Mr. Montgomery other than to return to work with the person he was complaining about as his supervisor. While it may be true that he was not "permanently discharged from Conti" he was terminated from the job he was working by Conti immediately after complaining about discrimination. Id. at p. 11. There can be no question that his complaints were legally protected. Further, there no question that the layoff was an adverse employment action and the timing of the decision to lay him off immediately after him making a complaint is sufficient to establish a causal connection between his protected activity and the adverse employment action.

Conti asserts that the decision to terminate his employment on the courthouse project was

based on his refusal to work with an individual he had just reported as being a racist and that Conti was winding down its work on the federal courthouse and regularly laying off workers anyway

The undersigned finds that there is sufficient evidence of pretext to allow the claim to proceed. First, as noted above, Plaintiff's desire not to work with a person he both believed to be racist and had reported to the company as engaging in discriminatory conduct is not unreasonable. The choice should not have to be that one continues to work under the supervision of the person they just made a complaint about or lose their job. Second, the fact that the job was winding down and other workers were being laid off is less than compelling. While this explanation may have merit if there was evidence that Conti had made the determination to lay Plaintiff off prior to his complaint or that there was a predetermined schedule for laying off workers according to various benchmarks on the job site, none of that evidence exists in this case. The decision to terminate Plaintiff's work on the job site appears to be merely a convenient excuse to terminate his employment because he made the complaint. While the evidence regarding his damages may be limited based on mitigation, that does not defeat his claim for retaliation related to the termination of his employment on the courthouse job site.

Plaintiff additionally claims retaliation related to subsequent other jobs or with the NJACT. Plaintiff testified that other than his allegation that one representative from Conti sat on the NJACT application panel, along with nine or ten other contractors, he had no evidence that Conti influenced his other employers or prevented him from getting into the NJACT. Docket No. 97-1, pp. 14-17. Accordingly, there is no evidence to support his assertion that Conti interfered with his other employment or with his relationship with the Union. Because Plaintiff cannot establish the required causal connection between his complaint about Allen and anything that occurred at subsequent other jobs or with the NJACT, his retaliation claim fails as a matter of law.

### III.   CONCLUSION

Consistent with the foregoing, the undersigned recommends that defendant IBEW Local 429's motion for summary judgment, (Docket No. 89), be **GRANTED**, and the claims against it be dismissed.

The undersigned recommends that defendant Conti Corporation's motion for summary judgment, (Docket No. 96), be **GRANTED IN PART** and **DENIED IN PART,** as discussed herein.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**