# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| JEREMIE MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 3:23-cv-01262** |
| INTERNATIONAL BROTHERHOOD | ) | **Judge Aleta A. Trauger** |
| OF ELECTRICAL WORKERS | ) | |
| AFL-CIO (IBEW) LOCAL 429 and | ) | |
| CONTI CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

*Pro se* plaintiff Jeremie Montgomery, a former electrical worker for Conti Corporation ("Conti"), brings suit against Conti and the International Brotherhood of Electrical Workers Local 429 (the "Union"), asserting claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII) and 42 U.S.C. § 1981. (Am. Compl., Doc. No. 52.) The case was referred to the Magistrate Judge for the disposition or recommended disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (Doc. No. 7.)[1]

Pursuant to that referral, the Magistrate Judge has issued a Report & Recommendation ("R&R") (Doc. No. 119), recommending that (1) the Motion for Summary Judgment filed the

---

[1] The original Complaint (Doc. No. 1) also asserted a claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 183, for breach of the collective bargaining agreement between Conti and the Union. In an earlier phase of this litigation, the court accepted the Magistrate Judge's recommendation to dismiss the LMRA claim against both defendants as time-barred and to dismiss the Title VII claim and the § 1981 retaliation claim against the Union for failure to state a claim for which relief may be granted. (Doc. Nos. 41, 42.) The Amended Complaint sets forth a § 1981 discrimination claim against the Union and Title VII and § 1981 discrimination and retaliation claims against Conti.

Union (Doc. No. 89) be granted; and (2) the Motion for Summary Judgment filed by Conti (Doc. No. 96) be granted in part and denied in part.

Now before the court are (1) plaintiff Jeremie Montgomery's Objections to both recommendations, filed with a supporting Memorandum (Doc. Nos. 123, 124); and (2) Conti's "Partial Objection" (Doc. No. 125), objecting to that part of the R&R recommending that summary judgment be denied as to the plaintiff's retaliation claim against Conti. The Union and Conti both filed Responses to the plaintiff's Objections, and the plaintiff filed a Response to Conti's Partial Objection. (Doc. Nos. 126, 127, 128.) For the reasons set forth herein, the court will overrule the plaintiff's Objections and sustain Conti's. The R&R will be accepted in part and rejected in part, and both Motions for Summary Judgment will be granted in their entirety.

I.     STANDARD OF REVIEW

A.     Review of Report and Recommendation

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* However, the district court is not required to review— under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151.

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not

entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### B.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, any party "may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

In moving for or responding to a motion for summary judgment, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

By its very terms, Rule 56 anticipates "that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.* at 248.

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence

is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

## II.   BACKGROUND

Montgomery, who is Black, alleges that he was a Union member covered by a collective bargaining agreement ("CBA") and that he was employed as an electrician by Conti on the Federal Courthouse project in downtown Nashville, from March 3, 2021 until he was wrongfully terminated on May 26, 2021. (Doc. No. 52 ¶ 1.) He alleges that he was terminated immediately after he made a verbal grievance against a foreman, Jimmy Allen. (*Id.* ¶¶ 2, 109–10.) Montgomery alleges that Allen had "an ongoing pattern of bullying and harassing union employees," making "racially insensitive statements praising the KKK," and "blatantly disrespect[ing] Montgomery." (*Id.* at 2.)

Montgomery reported a verbal altercation with Allen to "NJACT [Joint Apprenticeship and Training Committee] director Stephen Hall." (*Id.*) Hall asked Montgomery if he wanted to be moved to a different work site. Montgomery objected that he should not be the one moved; he

wanted Allen to be reprimanded. Hall called Conti's Director of Operations for Nashville, Todd Roberts. Roberts allegedly told Hall that the Federal Courthouse project was nearing completion, that Allen's "experience was needed at the courthouse to complete the project," and that Conti "could not afford to discipline Allen prior to the project deadline." (*Id.*) Montgomery alleges that "Roberts chose to terminate Montgomery's contract against his will." (*Id.* at 2–3.) Based on these actions, Montgomery alleges that he was terminated illegally, without just cause and in violation of the CBA. He asserts race discrimination and retaliation claims under Title VII and § 1981 against Conti and a race discrimination claim against the Union under § 1981. (*Id.* at 24–30.)

Montgomery filed a discrimination complaint with the Tennessee Human Rights Commission and EEOC in May 2021 and received his Notice of Right to Sue in September 2023. (*See* Doc. No. 1-1.)

Following contentious discovery and motion practice, the Union now seeks summary judgment on the single § 1981 claim against it on the grounds that (1) the actions of Stephen Hall, as an agent of the NJACT cannot be attributed to the Union; (2) Montgomery did not bring his requests to file a race-related grievance against Conti to Union representatives within the time limit set forth in the CBA for filing grievances; and (3) Montgomery has no evidence that Hall or any Union representative was motivated by discriminatory animus against Montgomery. (*See generally* Doc. No. 90.)

The R&R, after a comprehensive review of Montgomery's arguments in opposition to the Union's motion, the evidence in the record, and the applicable legal standards, recommends that the Union's motion be granted. The R&R specifically finds that (1) the NJATC is an independent legal entity, and the plaintiff has not presented any evidence suggesting that Hall, as assistant director of the NJACT, acted as an agent of the Union under ordinary common-law agency

principles; (2) Montgomery brought his complaints about Conti to Union representatives long after the ten-day deadline for doing so set forth in the CBA, such that their failure to pursue the grievance cannot be deemed discriminatory; and (3) the plaintiff has presented no evidence, direct or circumstantial, that would permit a reasonable jury to find that Hall or the Union representatives were motivated by a discriminatory animus. (Doc. No. 119 at 10–11.)

Conti seeks summary judgment on all claims against it as well. (Doc. No. 96.) It argues that (1) the plaintiff fails to present evidence sufficient to establish the existence of a hostile work environment; (2) the discrimination claims under both Title VII and § 1981 fail because the plaintiff lacks evidence of disparate treatment; and (3) Conti is entitled to summary judgment on the retaliation claims under both statutes because (a) Montgomery lacks sufficient evidence to establish a causal connection between his protected activity and any adverse employment action by Conti on May 26, 2021 or anytime after that, and (b) he cannot show that Conti's legitimate, non-retaliatory reasons for laying off the plaintiff are pretextual. (*See generally* Doc. No. 97.)

Based on an equally thorough review of the factual support for Conti's motion, the plaintiff's countervailing evidence, and the applicable law, the R&R recommends that Conti's motion be granted in part. Specifically, it recommends summary judgment for Conti on the plaintiff's discrimination claims (under both Title VII & § 1981) arising from his termination— which Conti characterized as a layoff—based on the plaintiff's failure to show that Conti's proffered legitimate, non-discriminatory reasons for his termination/layoff are pretext for discrimination. (Doc. No. 119 at 18.) The R&R recommends summary judgment on the plaintiff's hostile work environment claim based on the plaintiff's failure to allege facts showing that he was subjected to an objectively hostile work environment. (*Id.* at 19–20.) Regarding the plaintiff's retaliation claim, however, the R&R finds that the plaintiff has presented sufficient evidence to

state a *prima facie* case, including sufficient evidence from which a reasonable jury could draw the inference that the plaintiff's position was terminated because he engaged in protected activity, and sufficient evidence that Conti's proffered reasons for laying him off are pretextual. (*Id.* at 21–22.) However, the R&R recommends that the plaintiff's retaliation claim based on Conti's allegedly interfering with Montgomery's subsequent employment opportunities or his relationship with the Union be dismissed for lack of evidence. (*Id.* at 23.)

Both Montgomery and Conti have filed Objections to the R&R (Doc. Nos. 123, 125), and the Union and Conti filed Responses to the plaintiff's Objections (Doc. Nos. 126, 127).

## III.    DISCUSSION

### A.    The Union's Motion for Summary Judgment

Montgomery objects to the recommendation that the Union's motion for summary judgment on the § 1981 claim against it be granted. He contends that the R&R erroneously concludes that Hall, as NJACT assistant director, was not acting as an agent for the Union and that Hall failed to inform the plaintiff of his right to fair representation, which would have included telling him he had only ten days to bring a grievance against Conti. (Doc. No. 123 at 4–5.) The Union filed a Response to the plaintiff's Objections, arguing that (1) the plaintiff fails to specify the portions of the R&R to which he objects; (2) the plaintiff fails to identify any evidence that creates a material factual dispute; (3) the plaintiff cites non-existent cases and misrepresents the factual record; and (4) the plaintiff cannot establish the necessary elements of his claim. (*See* Doc. No. 126 at 1–2.)

The court finds on *de novo* review that the Union is entitled to summary judgment. To establish a race discrimination claim against a union that does not directly employ the plaintiff, premised on the failure to file a grievance, a plaintiff typically must show that "(1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the

violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) the union's actions were motivated by discriminatory animus." *Wimpye v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO/CLC, Loc. Lodge 1943*, No. 1:11-cv-845, 2012 WL 1340363, at *3 (S.D. Ohio Apr. 17, 2012) (citing *York v. AT & T Co.*, 95 F.3d 948, 955–56 (10th Cir. 1996)), *report and recommendation adopted*, No. C-1-11-845, 2012 WL 3070814 (S.D. Ohio July 30, 2012). "The duty of fair representation does not require that a union fully pursue every grievance filed," and "a union's decision not to pursue a grievance, based on thorough investigation of the employee's complaint and a reasonable conclusion that the complaint does not merit further use of the grievance procedure, does not necessarily violate the union's duty of fair representation" *Driver v. U.S. Postal Serv., Inc.*, 328 F.3d 863, 869 (6th Cir. 2003) (citing *Williams v. Molpus*, 171 F.3d 360, 366–67 (6th Cir .1999) ("[A] union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith.")).

The Magistrate Judge found that the plaintiff's claim against the Union failed on three fronts: (1) Montgomery failed to show that Stephen Hall acted as an agent of the Union; (2) Montgomery brought his complaints about Conti to actual Union representatives long after the expiration of the ten-day deadline for doing so set forth in the CBA; and (3) Montgomery presented no evidence that Hall or the Union representatives were motivated by a discriminatory animus. The plaintiff has failed to show that any of these conclusions was erroneous as a matter of fact or law.

First, as the Union points out, several of the plaintiff's case citations are simply non-existent.[2] And those that do exist either do not support the proposition for which the plaintiff cites

---

[2] These include the plaintiff's references to *Operating Engineers Local 406 JATC*, 271 NLRB 1396 (1984) (which the plaintiff claims held a "union accountable when its JATC expelled apprentices and impacted referrals"); *IBEW Local 212 (Cincinnati JATC)*, 331 NLRB 152 (2000)

them or are otherwise irrelevant. Regardless, the plaintiff has failed to present any facts showing that Stephen Hall, as assistant director of the NJATC, acted as an agent of the Union or was directed by the Union in his dealings with the plaintiff, based on ordinary principles of agency law. *Accord NLRB v. Int'l Bhd. of Elec. Workers, Local 429*, 514 F.3d 646, 650–51 (6th Cir. 2008) (reversing NLRB's determination that the JATC acted as an agent for the union under "common law agency principles," because "NLRB did not discuss or apply principles of agency law in its decision"); *Int'l Bhd. of Elec. Workers, Local 429*, Case 26-CB-4240, 357 NLRB 332, 333 (2011) (following remand by the Sixth Circuit, finding that an agency relationship existed based on record evidence that the actions taken by the JATC were directed by union officials and agents and that the union-appointed members of the committee did not act as trustees but acted to "advance only union interests"). Consequently, any action or inaction by Hall cannot be attributed to the Union, for purposes of the plaintiff's discrimination claim against the Union. More importantly, aside from rank speculation, the plaintiff presents no evidence, circumstantial or direct, from which racial animus on the part of Hall or any actual agent of the Union could be inferred.

Consequently, the court will accept the recommendation that the Union's Motion for Summary Judgment be granted, overrule the plaintiff's objections, and grant the Union's motion.

---

(which the plaintiff says held that a union "was liable when the JATC discriminated in referrals, even though the JATC was partly independent"); and *EEOC v. Ironworkers Local 28*, 2012 WL 4339035 (S.D.N.Y. 2012) (which the plaintiff says held that a "union could not avoid liability simply because complaints were made to a joint training committee, not directly to a steward"). (*See* Doc. No. 124 at 3.) The plaintiff's citations are incorrect, and the court has not located these cases elsewhere. It is unclear whether the plaintiff relied on AI for drafting assistance, which may have resulted in "hallucinations."

### B.    Conti's Motion for Summary Judgment

#### 1.    *The Plaintiff's Objections*

##### a)    *Hostile Work Environment Claim*

The plaintiff objects to the recommendation that Conti's motion be granted with respect to his discrimination and hostile work environment claims. First, he refutes what he characterizes as the R&R's finding that he "conceded" his hostile work environment claims, and he maintains that the facts establish that a "Conti Supervisor racially harassed and created a hostile environment for him as well as other Conti Corp employees." (Doc. No. 123 at 9.) Second, he insists that the Magistrate Judge erred in failing to consider the Declaration and deposition testimony of third-party witness John DeLaFuente which, the plaintiff claims, create a material factual dispute that should preclude summary judgment as to this claim. (*Id.* at 9–10.) He also argues that Jimmy Allen's acts, because he was a supervisor, can be attributed to Conti. (*Id.* at 13.)

Conti argues in its Response that nothing in the record indicates that the Magistrate Judge overlooked Delafuente's Declaration, that the Declaration has "*zero* evidentiary value given that Plaintiff deposed Mr. DeLaFuente . . . after Plaintiff produced the declaration," and, moreover, that the Declaration is "so vague and self-serving that it has no meaningful evidentiary value and certainly does not help establish Plaintiff's hostile work environment claim." (Doc. No. 127 at 2–3.)

As set forth above, the Magistrate Judge concluded that the plaintiff failed to present facts from which a reasonable jury could conclude that he suffered a hostile work environment. To be clear, although Conti argued that the plaintiff had "conceded" his hostile work environment claim (*see* Doc. No. 97 at 16), the Magistrate Judge did not make that finding and considered the claim on its merits (*see* Doc. No. 119 at 18–19). The plaintiff's other Objections are also without merit.

To establish a hostile work environment claim, a plaintiff must establish that "(1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome . . . harassment; (3) the harassment complained of was based on [race]; (4) the charged [racial] harassment created a hostile work environment; and (5) the employer is liable." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 683 (6th Cir. 2024) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

For the fourth element, a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To make this showing, the plaintiff must show that the conduct complained of was objectively "so severe or pervasive as to constitute a hostile or abusive working environment" to a reasonable person and, subjectively perceived as such by the victim. *Id.* at 687 (citations omitted). "As part of this evaluation, [the court] must consider the 'totality of the circumstances,' rather than each event complained of in isolation." *Id.* (quoting *Randolph*, 453 F.3d at 732). Specifically, the court must consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Randolph*, 453 F.3d at 733 (quoting *Harris*, 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In this case, the plaintiff testified that he experienced three instances of racist comments while working for Conti, all by Jimmy Allen. (Doc. No. 97-1 at 23–27, Montgomery Dep. 86–89.) The first incident involved an argument between Allen and Montgomery about the role and the history of the KKK, shortly after the plaintiff began working for Conti, with Allen defending the KKK as having "policed bad people and restored order to the South during the Reconstruction era." (Doc. No. 52 at 2; Doc. No. 97-1 at 26, Montgomery Dep. 89.) Allen was apparently not a supervisor at the time, and the plaintiff did not contemporaneously report the altercation to any Conti supervisor. The second incident did not involve the plaintiff directly. He simply overheard Allen and other Conti employees joke about whipping and beating anyone who voted for liberal politicians and the liberal politicians themselves, including Joe Biden, Kamala Harris, Nancy Pelosi, the Clintons, and Barack Obama. (Doc. No. 52 ¶ 27; Doc. No. 97-1 at 239, Montgomery Dep. 86.) The third instance took place the morning of May 26, 2021, by which time Allen was the foreman for the Federal Courthouse project, which the plaintiff did report to Conti. (*See* Doc. No. 97-4, at 6.) The plaintiff testified that Allen humiliated him and asked him if he was high on crack in front of other workers and told him to move faster and, more specifically, to run down an unsafe stairway. The plaintiff refused and accused Allen of being racist, based on Allen's "prior statements" and how Allen treated Montgomery generally. (Doc. No. 52 ¶ 67; Doc. No. 97-1 at 45–46; Montgomery Dep. 162–63.)

The first incident, though Allen's position was objectively offensive, was not severe. It did not involve physically threatening conduct, and it was an isolated incident. The second incident did not overtly involve race at all; instead, it involved party politics. Although the plaintiff perceived it as race-related, it consisted of offhand comments that were not directed to the plaintiff. The plaintiff subjectively perceived the third incident as race-based as well, but the plaintiff admits

that he was the one who brought up the issue of racism, and his perception that it was race-based arose from his prior interactions with Allen and his belief that Allen is racist. Regardless, these three incidents consisted of offensive statements alone, and such incidents did not occur frequently or pervasively. Applying the totality of the circumstances test, the court finds that the three incidents about which the plaintiff complains were objectively not sufficiently "severe or pervasive" to create a hostile work environment.

On this basis, the court agrees that Conti is entitled to summary judgment on the plaintiff's hostile work environment claim. The plaintiff's objection regarding Conti's treatment of a different employee, John DeLaFuente, is simply beside the point. The question is whether *Montgomery* experienced a racially hostile work environment. During his deposition, he described only the three incidents discussed above in support of his claim. The fact that DeLaFuente also allegedly suffered harassment by Allen that he perceived as race-based has no bearing on Montgomery's claim.[3]

*b)*     *Race Discrimination Claim*

The Magistrate Judge concluded that the plaintiff's race discrimination claims under Title VII and § 1981 failed because, even assuming that Montgomery could establish a *prima facie* case of discrimination, he failed to show that the defendant's proffered reason for its action was pretext for discrimination, under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). (*See* Doc. No. 119 at 17–18.)

The plaintiff objects that the evidence established that Allen targeted the plaintiff, "forc[ing] him to run as a form of discipline, while white employees who are inexperienced or

---

[3] The court notes that DeLaFuente claims to have been subjected to "racist" statements by Allen, but he does not describe them, though he does claim that Allen harassed him about his age and medical condition. (Doc. No. 103-2 ¶¶ 9–10.) DeLaFuente's "belief" that Allen's harassment was "racially motivated" is entirely conclusory and unsupported by actual facts.

slow were never forced to run downstairs as punishment." (Doc. No. 123 at 15.) The adverse employment action in this case is not Allen's treatment of the plaintiff, but Conti's termination of the plaintiff. In the context of addressing the R&R's recommendation that the claim against the Union be dismissed, the plaintiff also argues that pretext is established by the fact that "Conti Corp's project manager Kevin Och . . . lies about Montgomery requesting a layoff so he could transfer to another contractor," while Todd Roberts "claims that the plaintiff was laid off due to lack of work." (Doc. No. 123 at 6.) The plaintiff fails to present actual evidence to support this purported discrepancy.

Regardless, as the Magistrate Judge found, the evidence shows that Montgomery refused to return to work with Allen—even temporarily while Conti investigated his complaint. Because the Federal Courthouse project was winding down, Conti laid off Montgomery so that he could go work for a different contractor. (*See* Doc. No. 97-4, Thompson Decl. ¶ 6; *see also* Doc. No. 97-4 at 11 (Conti Notice of Termination showing "Layoff–Reduction in Force" as reason for termination).) Conti expressly told Montgomery that he was not barred from working for Conti on other projects. (Doc. No. 97-1 at 17, Montgomery Dep. 58; *see also* Doc. No. 97-4, Thompson Decl. ¶ 9.) The court agrees with the Magistrate Judge that Conti has met its burden of proving that it had no racial or retaliatory animus related to Montgomery's layoff, and the plaintiff has not satisfied his burden of proving pretext. The court, therefore, will accept the recommendation that the plaintiff's discrimination claims be dismissed.

c)      *Retaliation Claim*

Part of the plaintiff's retaliation claim against Conti is based on allegations that Conti targeted or blackballed him after his termination, speculating that his termination from other jobs and being denied acceptance to an apprenticeship school were somehow Conti's fault. The Magistrate Judge finds that this part of the plaintiff's retaliation claim fails as a matter of law for

lack of evidence. The plaintiff has not objected to that finding, and the court will accept it without further discussion.

### 2. *Conti's Objections*

The plaintiff also claims that his termination from Conti was in retaliation for his having submitted a complaint about Allen. The R&R recommends that summary judgment as to this claim be denied. Specifically, the Magistrate Judge found that the plaintiff successfully made out a *prima facie* case of retaliation, largely based on the timing of his termination in relation to his complaint about Allen, and that there was sufficient evidence from which a jury could find that Conti's reasons for its action (laying off the plaintiff) were pretext for retaliation. (*See* Doc. No. 119 at 23 ("The decision to terminate Plaintiff's work on the job site appears to be merely a convenient excuse to terminate his employment because he made the complaint. While the evidence regarding his damages may be limited based on mitigation, that does not defeat his claim for retaliation related to the termination of his employment on the courthouse job site.").) Conti objects that the evidence in the record does not support this conclusion. (Doc. No. 128.) The plaintiff responds that Conti's witnesses are not credible and that the record does not support Conti's position (Doc. No. 128).[4] Upon *de novo* review of this claim, the court will sustain Conti's objection.

---

[4] Montgomery also argues in his Response that he has been "blacklisted" by both Conti and the Union "because he refuses to compromise his position on racism and tolerate workplace bullying," as a result of which "the adverse actions of both defendants are continuous and ongoing." (Doc. No. 128 at 2–3.) As noted above, however, Montgomery's own Objections do not address the R&R's recommendation that summary judgment for Conti be granted on Montgomery's retaliation claim based on events that occurred after his termination, for lack of evidence. The plaintiff admitted during his deposition that he had no evidence, aside from his own speculation, that Conti or the Union had interfered in his subsequent employment or the denial of his application to the NJACT "school" for an apprenticeship. (*See* Doc. No. 97-1 at 8–12, Montgomery Dep. 48–52.)

The plaintiff testified that, immediately after his altercation with Allen on May 26, 2021, he left the job site. (Doc. No. 97-1 at 46, Montgomery Dep. 163.) Before he left the courthouse, he called Stephen Hall, the NJACT representative, and told him that Allen was making "racist comments" and generally insulting him, "talking to [him] crazy, trying to make [him] run up and down the stairs." (*Id.* at 48, Montgomery Dep. 166.) Hall told him to come down and talk about it. (*Id.*) So Montgomery went to Hall's office and told him again what happened. Hall called Todd Roberts. While the plaintiff could hear Hall's side of the conversation, he did not remember hearing what Roberts said. (*Id.* at 48–50, Montgomery Dep. 166–68.)

The plaintiff claims that, ordinarily, "they're supposed to call the union steward to mediate" a dispute like the one he had with Allen, but that did not happen. (*Id.* at 50, 51, Montgomery Dep. 168, 171.) Montgomery confirmed that, until the issue was resolved, he would not have gone back to work with Allen. (*Id.* at 51,53–54, Montgomery Dep. 171, 173–74.) He would have been "open to the idea," but not until "the issue was resolved." (*Id.* at 54, Montgomery Dep. 174.) He refused to work with Allen as his supervisor unless Allen sincerely apologized and showed remorse. (*Id.* at 55, Montgomery Dep. 175.) Conti did not give him the option to transfer to a different job site, and Montgomery does not know whether there was any discussion between the Union and Conti about transferring him to a different site. (*Id.* at 52, Montgomery Dep. 172.)

According to Caitlynn Thompson, Conti's Safety Manager at the Federal Courthouse project at the time, she spoke on the phone with Montgomery at 12:19 p.m. on May 26, 2021, the day of his altercation with Allen. (Doc. No. 97-4, Thompson Decl. ¶¶ 4–5.) This conversation was "part of [her] investigation into Mr. Montgomery's complaint about the incident." (*Id.* ¶ 5.) According to Thompson, following this incident, Montgomery "chose to be laid off from Conti so he could work for a different contractor." (*Id.* ¶ 6 & Ex. B, Doc. No. 97-4 at 8.) Conti documented

Montgomery's departure as a "layoff." (Doc No. 97-4 at 11.) Following Thompson's investigation, Conti directed Allen to take diversity and inclusion training. (*Id.* ¶ 7.) Thompson informed Montgomery by text message on June 4, 2021 that he was not permanently discharged from Conti and was eligible for rehire. (*Id.* ¶ 9 & Ex. C, Doc. No. 97-4 at 11.)

According to Conti, work on the Federal Courthouse project was winding down by the spring of 2021, and Conti laid off other electrical workers around the same time as the plaintiff, including one White electrical worker in the plaintiff's same classification the very next day. (Doc. No. 97-5, Podrasky Decl. ¶ 8 & Ex. A, Doc. No. 97-5 at 6–7.)

Conti argues that the plaintiff's refusal to return to work with Allen as his supervisor until their issue was resolved and Allen apologized was "tantamount to Plaintiff refusing to work at the Federal Courthouse project because Allen was foreman at the time, and it was unreasonable for Plaintiff to expect that the issues would be resolved immediately." (Doc. No. 97 at 12.) It contends that Montgomery was laid off *because* he would not go back to work at the courthouse, and he and the Union reached an agreement for him to work for a different contractor. He was referred for a different job the next day and began working for a different contractor within a week after leaving Conti. (*See id.* at 13; *see also* Doc. No. 97-1 at 57, Montgomery Dep. 178; Doc. No. 97-6 at 6, Montgomery 2nd Dep. 19.)

When a retaliation claim is based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework to analyze the claim. *See, e.g.*, *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020).[5] Conti does not object to the R&R's finding that the plaintiff has established a *prima facie* claim of retaliation, but it argues that there is "no reasonable dispute that Conti had legitimate, non-discriminatory and non-retaliatory reasons for laying off Plaintiff"

---

[5] The plaintiff does not contend that the claim is supported by direct evidence.

and that Montgomery cannot rebut its reasons. In particular, "Plaintiff would not go back to work with Allen," who was important to the completion of the project, and "the Federal Courthouse job was winding down with layoffs occurring regularly, so Conti laid off Plaintiff to allow him to go work for a different contractor (which Plaintiff ended up doing exactly that just mere days later)." (Doc. No. 97 at 24.) Montgomery argues in response that Conti's claim that he was "transferred due to lack of work" constitutes "pretext," because other electricians and apprentices continued to work at the courthouse after his assignment was terminated. (Doc. No. 103 at 4–5.)[6]

The R&R rejected Conti's argument, finding, first, that Montgomery's "desire not to work with a person he both believed to be racist and had reported to the company as engaging in discriminatory conduct is not unreasonable" and that Montgomery should not have had to choose to continue to work under the supervision of such a person or lose his job. (Doc. No. 119 at 23.) And second, the R&R found that the evidence that the courthouse work was winding down was "less than compelling," because Conti did not make the decision to lay off the plaintiff until after he complained. (*Id.*)

A plaintiff "can show pretext in three interrelated ways: (1) that the proffered reason[] had no basis in fact, (2) that the proffered reason[] did not actually motivate the employer's action, or (3) that [the proffered reason was] insufficient to motivate the employer's action." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 350–51 (6th Cir. 2021) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "At its core, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Id.* at 351 (quoting *Chen*, 580 F.3d at 400 n.4). The Sixth Circuit has repeatedly cautioned that the plaintiff's "burden is not heavy" and

---

[6] As set forth above, he apparently also contends that Conti has offered conflicting reasons for the action, but he has not proffered actual evidence of this conflict.

that "summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Id.* (collecting cases). "Where . . . there are two reasonable interpretations of the evidence, [the court] must allow the jury to resolve the issue of whether the evidence [the plaintiff] cites is sufficient evidence to conclude that [the defendant] retaliated against [him] for opposing an unlawful employment practice." *Id.* (citation omitted).

Here, the defendant articulated a legitimate non-discriminatory reason for its action, meaning that the burden of production shifts back to Montgomery to demonstrate that Conti's proffered reason was a mere pretext for discrimination. *Kenney*, 965 F.3d at 448. It is undisputed that Montgomery refused to go back to work with Allen unless Allen apologized and was remorseful.[7] Moreover, expecting immediate resolution of his complaint against a supervisor who was important to the project was clearly unreasonable on Montgomery's part, and the "inability to get along with a supervisor is a legitimate reason for discharge." *Kurtzman v. Univ. of Cincinnati*, No. 1:09-CV-580-HJW, 2012 WL 1805486, at *13 (S.D. Ohio May 17, 2012); *see also Arnold v. Marous Bros. Constr., Inc.*, 211 F. App'x 377, 381 (6th Cir. Nov.17, 2006) (observing that an employee's refusal of a work order was a legitimate, non-discriminatory reason for the employer to force the employee to resign); *Allen v. Henry Ford Health Sys.*, No. 08-14106, 2010 WL 525059, at *11 (E.D. Mich. Feb. 8, 2010) ("Forcing an employee to resign when she questions and refuses a supervisor's work assignment is a legitimate, nondiscriminatory reason for that employment action." (citing *Arnold*)). Montgomery also did not present actual evidence to rebut the defendant's evidence that it was winding down the courthouse project and regularly laying off electricians.

---

[7] The plaintiff argues in his Response to Conti's Partial Objection that he did not refuse to return to work, but he also reaffirms that he refused to return to work unless his problems with Allen were resolved. (Doc. No. 128 at 8–10.)

And it is undisputed that Montgomery was referred for work with a different contractor the next day and was back at work within a week.

The plaintiff has not shown that Conti's proffered reasons for its action had no basis in fact, did not actually motivate the action, or were insufficient to motivate it. *Jackson*, 999 F.3d at 350–51. Under the circumstances, no reasonable jury could find that Conti's reasons for laying off the plaintiff were not its real reasons and, instead, were pretext for retaliating against Montgomery for lodging a complaint against Allen. In light of Conti's need to investigate Montgomery's claims prior to taking any disciplinary action against Allen, it seems clear that Conti did not discharge the plaintiff *because of* his complaint against Allen but, instead, because of his refusal to work with Allen, coupled with the fact that he would have eventually been laid off anyway, even if not immediately.

Because the plaintiff has not presented evidence that would permit a reasonable jury to conclude that Conti's reasons for laying off the plaintiff were pretext for retaliation, Conti is entitled to summary judgment on the plaintiff's retaliation claim.

## IV.    CONCLUSION AND ORDER

For the reasons set forth herein, plaintiff Jeremie Montgomery's Objections to the R&R (Doc. No. 123) will be overruled; Conti's "Partial Objection" (Doc. No. 125), will be sustained; the R&R will be accepted in part and rejected in part; and both Motions for Summary Judgment (Doc. Nos. 89, 96) will be granted in their entirety.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge